JERE M. NANCE ET AL. V. FRANK M. JOHNSON ET AL.

No. 7386.

**Public School Law—Control by Local Trustees.**—Article 3715, Revised Statutes, charges the Superintendent of Public Instruction "with the administration of the school law and a general superintendency of the business relating to the public schools of the State," and directs, that "he shall hear and determine all appeals from the rulings and decisions of subordinate school officers, and all such officers and teachers shall conform to his decisions unless they are reversed by the State Board of Education." Appeals are allowed from the rulings of the State Superintendent to the State Board of Education. Rev. Stats., art. 3714. Suit by injunction by local taxpayers against a local board of trustees and the teacher on alleged ground that a sectarian school was being supported at the public expense can not be entertained in the District Court until after appeal as provided and as above stated.

APPEAL from Hays. Tried below before Hon. H. TEICHMUELLER. No statement is necessary.

*W. O. Hutchison* and *Thos. H. Franklin,* for appellants.—1. A sectarian school is one in which sectarianism is taught, or which is under the direct management and control of some sect, or which is subject, directly or indirectly, in its management, to the influence of some sect

to such an extent that it is thereby made a medium to strengthen and increase the power of such sect. Both the statement of facts and the findings of the court show that the school which derived the benefit of the public school fund of said Kyle community was (under the above definition) a sectarian school. Sayles' Civ. Stats., art. 3703, sec. 5; Id., art. 3681b, sec. 20; Id., art. 3705.

2. School trustees of a public school community hold the public school fund allotted to said community in trust for said community. Sayles' Civ. Stats., art. 3703, secs. 1–6; Id., arts. 3704, 3711, 3712, 3724, 3739, 3746, 3750, 3771–3776.

The conditions of such trust are fixed by the law under which the trust is created, and the trust estate must be administered under the law. The trustees have no power to apply the trust fund so held by them to any other purpose nor in any other manner than is authorized by the law. Any application of said fund not authorized by the law is a misapplication thereof, is illegal and void, and a court of equity will, on the application of citizens interested in such fund, enjoin such illegal application of such fund.

*Ford, Neighbors, Kone,* and *Walton, Hill & Walton,* for appellees.—1. A sectarian school in the sense of the Texas Constitution and laws is a school wherein the doctrine of some religious sect is taught. A school may be under the management of persons who belong to a particular sect of religionists, yet if the doctrine of the sect is not taught or propagated directly or indirectly therein, then the school is not sectarian in character. Const., art. 1, sec. 7; Id., art. 7, sec. 5; Rev. Stats., art. 3705; Donahue v. Richards, 38 Me., 379.

2. The public school law of the State of Texas is a complete system in itself that provides adequate remedies for any infraction of its integrity, and provides speedy and perfect cure for any and all irregularities, and by imperative implication excludes the interference of the judiciary until the school law remedies have been invoked and failed in their efficacy. Rev. Stats., arts. 3705, 3708, 3713–3715, 3717, 3718; Acts 1889, p. 15; Rev. Stats., arts. 3720, 3733e, 3736, 3741, 3743, 3746, 3748, 3750, 3752, 3757, 3761, 3762, 3766–3768, 3771–3776.

3. In view of the fact that appellants have in no legal way brought the contract which they arraign as illegal and unauthorized by statute before the court for construction, we may well, prudently, and rightly omit to notice aught proposed or discussed on the subject of the said contract, and let it rest where it was left by the court below, viz., sustained and upheld, and we pursue that course.

HENRY, Associate Justice.—This suit was brought by appellants, citizens of and taxpayers in Kyle school community, Hays County,

against Frank M. Johnson, treasurer, Ed. R. Kone, county judge and ex officio school superintendent, Ferg. Kyle, G. W. Whisenant, and R. W. Hubbard, school trustees of said community, and Professor Milton Park, teacher of the school in said community, to enjoin the payment to said Park of the school fund allotted to said community, upon the ground that said trustees had entered into a certain contract with said Park under which the latter was to receive all of said public school money for teaching a certain school in said community, and that said contract was illegal, because the school so taught by said Park was sectarian, and said trustees had no authority as such to make it.

The contract reads as follows:

"SEPTEMBER 6, 1889.

"This is to certify, that the board of trustees of school community No. 36, of Hays County, Texas, have employed Professor Milton Park, holding a first grade certificate, to teach a public free school for said community, according to law and the regulations of the Superintendent of Public Instruction, and in conformity with the regulations of the county superintendent and school trustees of said community, for the term of forty-eight days, commencing September 9, 1889, and ending May 10, 1890, at 10 cents per day for each scholastic scholar. It is hereby agreed and understood by and between said Park and the trustees of said community, that the said Park will continue his school for the term as indicated above, and that each scholastic scholar shall be entitled to a credit of said forty-eight days tuition at any time during said term that they may see fit to avail themselves of it. And the said Park further binds himself to furnish all necessary assistance at his own expense. For pupils over or under the scholastic age, tuition at the rate of —— per month has been agreed on by the trustees. The same shall be paid to the teacher."

The cause was tried by the judge without a jury, and a judgment was rendered for the defendants.

The judge filed his conclusions of fact, showing that the school was taught by a member of the Baptist Church, in a house belonging to the San Marcos Baptist Association, a body organized for the purpose of maintaining a school for the advancement of the ends "of their religious or sectarian association;" that on account of a partial destruction of their building, the association, feeling unable to establish a school as originally designed, did, in September, 1889, turn over their school property to the community of Kyle to be used for public free school purposes. The contract in question was with Park by the lawfully appointed trustees of the school community, with the approval of the county judge of Hays County. All of the teachers engaged hold first grade certificates. The school was commenced with daily prayers, but no religious or sectarian instruction of any character was given.

We copy some of the conclusions of law filed by the court, reading as follows:

"Citizens and taxpayers clearly have such interests in the maintenance of nonsectarian public schools and the lawful application of public free school money as entitle them to legal protection. The general conduct and administration of the school system, however, are by law intrusted to the State Superintendent. Local officials and superintendents of schools in districts and communities are only empowered to organize and manage schools under the general supervision and control of the State Superintendent. His decision of controversies are legally binding on all subordinate officials, and they, as well as citizens, when feeling aggrieved, have a right to appeal to the State Board of Education. No appeal being provided from these decisions of the educational department, the authority of the courts to interfere with the management of the school system at the instance of citizens or school officials does not ordinarily exist, and the judicial power can not be invoked unless legal rights under the protection ·of judicial tribunals are clearly shown to have been violated. This ultimate power of the courts to interpose their authority for the protection of the legal rights of individuals, unless exercised with great caution and in cases of imperative emergency, is obviously liable to embarrass the efficient management of our school system in charge of specially appointed officials. And when, as in this case, the wrongs complained of are alleged to have been committed by subordinate officers, and when no effort is shown to correct or redress them by an appeal to the State Superintendent, a manifest and urgent necessity to protect legal rights clearly violated, and to prevent irreparable injury, can alone warrant judicial interference."

Article 3715 of the Revised Statutes charges the Superintendent of Public Instruction "with the administration of the school law, and a general superintendency of the business relating to the public schools of the State," and directs, that "he shall hear and determine all appeals from the rulings and decisions of subordinate school officers, and all such officers and teachers shall conform to his decisions, unless they are reversed by the State Board of Education." Appeals are allowed from the rulings of the State Superintendent to the State Board of Education. Rev. Stats., art. 3714.

These remedies were open to the plaintiffs in this case, and until they had exhausted them they were not entitled to an injunction.

It becomes unnecessary for us to express an opinion upon the merits of the controversy, or to decide any other question presented by the record.

The judgment is affirmed.

*Affirmed.*

Delivered April 22, 1892.