ADKINS et al. v. HEARD et al.

(Court of Civil Appeals of Texas. San Antonio. Jan. 21, 1914.)

1. PLEADING (§ 34*)—GENERAL DEMURRER — SUFFICIENCY OF PLEADING.

Every reasonable intendment is indulged in favor of the sufficiency of a petition as against a general demurrer.

[Ed. Note.—For other cases, see Pleading. Cent. Dig. §§ 5½, 66–74; Dec. Dig. § 34.*]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 48*)— USE OF SCHOOL FUNDS—JURISDICTION OF DISTRICT COURT—CONDITIONS PRECEDENT.

The remedies provided by Rev. Civ. St. 1911, art. 4509, by appeals to the county superintendent, and then to the state superintendent and board of education, must first be exhausted, and, where no such appeals were taken, an application to the circuit court for an injunction against improper use of school funds will be dismissed.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 100–111, 160; Dec. Dig. § 48.*]

Appeal from District Court, Refugio County; John M. Green, Judge.

Suit by C. H. Heard and others against Leslie Adkins and others. From a judgment for plaintiffs, the defendants appeal. Reversed.

W. L. Rea, of Refugio, and Dougherty & Dougherty and B. D. Tarlton, Jr., all of Beeville, for appellants. T. R. Wood and R. L. Daniel, both of Victoria, for appellees.

CARL, J. Appellees, C. H. Heard, J. J. Adkins, and F. B. Rook, taxpaying citizens of common school district No. 1, in Refugio county, brought this suit against Leslie Adkins, county judge and ex officio county superintendent of public schools, J. J. Power, Wilson Heard, and D. J. Kelley, trustees of said school district No. 1, and the Bank of Refugio, as the depository of the public free school funds. The purpose of the suit was to enjoin the trustees and the county superintendent from permitting to be carried out a contract whereby the trustees employed Fannie Horan, known in the religious world as Mother Augusta, Grace Taylor, known as Sister Mary Agnes, and Fannie McGlennon, known in the religious world as Sister Mary Xavier, to teach the public free school of common school district No. 1, in Refugio county.

The ground of complaint is that the school was being conducted in a sectarian manner; that the teachers so employed are members of a religious sectarian order known as "Sisters of Mercy," which is under the control of the Roman Catholic Church; that they wear the garb or dress indicative of their order while teaching, same being the costume of what is commonly called "Nuns"; and that only members of that order have been employed to teach the school for many years. It is further charged: That the schoolrooms are in the lower floor of a building which belongs to an educational corporation known as the "Academy of Our Lady of Lourdes," the incorporators of which are Sisters of Mercy and necessarily members of the Roman Catholic Church. The teachers, Sisters of Mercy, live upstairs; also, that religious services are held by the Catholic Church just a few feet away in another building, and bells are tolled at 6 o'clock mornings and at noon to indicate to all members of the Catholic Church that it is the hour for prayer.

The defendants (appellants) answered, denying that the school was being, or had ever been, conducted as a sectarian school, but admitted the allegations as to the teachers being Sisters of Mercy, and that they wore plain black dresses, with white collars and head pieces, and that to a girdle they wore was suspended a crucifix. It was admitted that they lived above the schoolrooms, and that their incomes as teachers which they derived from the public school funds, over and above their necessary living expenses, were devoted to the charitable and religious work of the church and its subordinate organizations. It was also admitted that the Catholic Church held religious exercises a few feet from the school building on Sundays, holidays, and when school was not in session; but specific denial was made that any effort was made at any time to give religious instruction.

The court granted the injunction, and defendants below, except Leslie Adkins, appeal. The court filed conclusions of law and fact, to which exception was duly taken.

[1] The first assignment of error complains that the court erred in overruling their general demurrer, because the petition did not affirmatively show that an appeal had been taken to the state superintendent of public instruction and to the state board of education before the suit was filed, and that the court was without jurisdiction until that was made to appear. It is contended by appellees that the allegation that the school of common school district No. 1, of Refugio county, was being conducted "in violation of law, and in violation of the rulings of the state board of education of the state of Texas," is sufficient as against a general demurrer. It is true that every reasonable intendment is indulged in favor of the sufficiency of a petition as against a general demurrer; but whether this is true where another branch of the government has primary jurisdiction before the jurisdiction of the courts attach, and the pleadings do not show that the remedies of the primary jurisdiction have first been exhausted, it will not be necessary for us to decide, since we shall dispose of the case on the second assignment of error.

[2] Article 2823 gives the control of the common schools to a board of trustees; they make contracts, and have general control under the supervision of the county super-

intendent. Article 2825, Revised Statutes of 1911. Article 4510 of the Revised Statutes of 1911 clothes the state superintendent with the duty of administering the school laws and school affairs of the public schools of the state, and article 4509 expressly provides an appeal from his decisions to the state board of education. In fact, the provisions of our school laws establish a complete system of procedure within itself before resort can be had to the courts. An appeal may be taken from the action of a board of trustees to the county superintendent. From his decision, it goes to the state superintendent and state board of education.

Before the courts will assume jurisdiction, the remedies established by law for school government must first be exhausted, and, if it appear, either by pleadings or from the evidence, that those remedies have not been exhausted before suit was filed, the bill will be dismissed.

The undisputed evidence shows that no appeal was ever taken to the state superintendent and state board of education. But a letter from State Superintendent Arthur Lefevre to Hon. W. L. Rea, county superintendent of Refugio county, was introduced. This letter dealt with a similar situation, and inclosed a copy of an opinion given by the state superintendent to John F. Shaw at Somerset, Tex. Another ruling of the state superintendent in Comal County v. Judge Adolf Stein, dated September, 1909, was used. The court states that this was admitted as an authority of law, but not as evidence. These letters show that the superintendent ruled that the wearing of the church garb while teaching, and conducting the school in a Catholic convent under conditions similar to those that exist in this case, was conducting a sectarian school, and giving sectarian instruction, and therefore they were not entitled to receive any of the public free school money. The Comal County Case was appealed to the superintendent at Austin and the state board of education. It was held that the teaching of school under conditions similar to those existing in the present case came within article 7, § 5, of the Constitution of the state, and article 2896, Revised Civil Statutes, prohibiting the use of any of the public free school fund to support a sectarian school. The court found that the letter to Judge Rea was written voluntarily in response to a letter from some lady suggesting that the school was being conducted as a sectarian school. These letters giving the ruling of the department of education on other cases are relied upon to show that an appeal was unnecessary, and, we presume, to account for the fact that no appeal was made to the state superintendent and state board of education. One thing is clearly established in this case, and that is that no such appeal was ever made to the state superintendent and state board.

So, whether the court erred or not in overruling the general demurrer to the petition, it is clear that the court did err in entertaining jurisdiction and granting the injunction when it was made to appear that no appeal had first been made to the proper school authorities. This is fundamental, and a condition precedent before the courts can entertain a bill. Jurisdiction of the subject-matter cannot be waived, nor can it be conferred by consent. It is fixed by law. Woodruff v. Harrell, 67 Tex. 298, 3 S. W. 48; Murchison v. White, 54 Tex. 78; Mercer v. Woods, 33 Tex. Civ. App. 642, 78 S. W. 15; Halloran v. T. & N. O. Ry. Co., 40 Tex. 465. A full collation of authorities on this question may be found on page 373, vol. 11 Encyclopedic Digest of Texas Reports.

The Legislature has seen fit to place the educational affairs of this state within the jurisdiction of a department created especially for that purpose, and has at the same time fixed the method of procedure by giving the right of appeal from the school boards to the county superintendent, and then to the state superintendent and board of education. That is, the primary jurisdiction and the judiciary will not assume jurisdiction in matters coming within the prerogatives of that department until the remedies therein provided are shown to have been exhausted. And when it is made to appear that those remedies have not first been resorted to, as it does in this case, the bill will be dismissed. It is on the same footing with a case appealed to this court from the justice's court without first appealing to the county court. It is no answer to say that the department of education has ruled on the question in another case. Each case must rest upon its own peculiar facts. There would be just as much logic in a litigant seeking to go direct to the Supreme Court because this court had held adversely on a similar case, and therefore it was useless to pursue the course prescribed by law.

This court will assume that the department of education will correctly and faithfully discharge the duties incumbent upon it in all cases, and will never assume jurisdiction of matters placed by law in that department until those remedies are shown to have been resorted to and exhausted. Mr. Justice Neill held, in the case of McCollum v. Adams, 110 S. W. 526, that it was fundamental to show that the remedies provided in the department of education had first been exhausted. Nance v. Johnson, 84 Tex. 401, 19 S. W. 559; Cochran v. Patillo, 16 Tex. Civ. App. 458, 41 S. W. 537; Harkness v. Hutcherson, 90 Tex. 383, 38 S. W. 1120; McClure v. Bryant, 18 Tex. Civ. App. 141, 44 S. W. 3; McCollum v. Adams, 110 S. W. 526; Trustees v. Dudney, 142 S. W. 1007.

In the McCollum Case, supra, the court said: "The plaintiffs had no right to resort to the courts for relief in this matter until they had exhausted their remedy by appeal to the superintendent of public instruc-

tion, who is charged with the administration of the school laws, to whom appeals in matters like those in question must be made. From this it is apparent that the petition discloses no right of action, and that the evidence shows that none exists. Thus fundamental error * * * upon the record is shown" and the case is reversed.

This case reaffirmed the doctrine laid down in Cochran v. Patillo, 16 Tex. Civ. App. 458, 41 S. W. 537, where it is said: "The school law provides a system for the control * * * of the public schools of the state by the officers and the boards whose duties are to see that the laws are properly administered, and that no pupil is deprived of the right to enjoy the benefits of the school. There is no pretense, by any averment in the petition or any fact in evidence, that application was made to any of the school authorities to have the boy reinstated. No case was shown that would authorize the courts to interfere with the management of the school by the school authorities."

This question was again before the courts in Trustees v. Dudney, 142 S. W. 1007, and it was there held that the superintendent of public instruction has the power to hear and determine all appeals from the rulings and decisions of the subordinate school officers, and that the rule established by the courts is to the effect that such an appeal and decision is a condition precedent to the right of either party to bring the matter in controversy before the courts.

In the light of these authorities, coupled with the fact that it is conceded no appeal was had in this case to the state superintendent of public instruction, this court and the court below have no jurisdiction, and the judgment is reversed, and the bill dismissed.