## CITY OF DALLAS et al. v. MOSELY et al.
### (No. 9829.)*

(Court of Civil Appeals of Texas. Dallas. June 12, 1926. Rehearing Denied July 3, 1926.)

1. **Schools and school districts** ⊜⟹47.

Charter of City of Dallas, art. 5, § 1, providing that board of education shall have exclusive control of public schools, did not divest state superintendent of all power of supervision.

2. **Injunction** ⊜⟹108—Before suing for injunction against board of education, charged with unlawfully maintaining health department, appeal to state superintendent and state board held unnecessary (Rev. St. 1925, art. 2656).

Where petition for injunction alleged that board of education unlawfully maintained health department and illegally expended large sums of money therefor, appeal to state superintendent and state board of education was not necessary before suing, in view of Rev. St. 1925, art. 2656.

3. **Injunction** ⊜⟹88.

Injunction will properly issue to restrain the diversion of public funds intrusted to public officers for special use.

4. **Schools and school districts** ⊜⟹55.

Board of education of city of Dallas, under Constitution and charter, has discretion to exercise any power relating to school system not prohibited by law, which it believes will establish and maintain an efficient school system.

5. **Schools and school districts** ⊜⟹157—Establishment of health department held within discretion of board of education (Charter of City of Dallas, art. 5, § 1; Rev. St. 1925, art. 2827).

Under Charter of City of Dallas, art. 5, § 1, authorizing board to employ necessary persons, and under Rev. St. 1925, art. 2827, authorizing board to expend local funds for necessary purposes to be determined by board, establishment of health department *held* within discretion of board, as work of department was in itself instructive on matters directly related to the efficiency of the schools and tended to their betterment.

6. **Schools and school districts** ⊜⟹157.

Under rules of school health department, providing that no child should be excluded from school and that no treatment should be given except in case of emergency, *held* rights of city health department were not infringed upon.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Suit for injunction by Fred T. Mosely and others against the City of Dallas and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

James J. Collins, Hugh S. Grady, H. P. Kucera, and W. Hughes Knight, all of Dallas, for appellants.

Clark & Clark, of Dallas, for appellees.

JONES, C. J. Appellees prevailed in the trial of an injunction suit in the district court of Dallas county, Tex., and a judgment was entered restraining the board of education of the city of Dallas, and each individual member thereof, from maintaining in the public free schools of the city of Dallas the department of health in connection with said schools, and restraining the city of Dallas, its auditor and treasurer, from the payment of any money for such purpose. The suit was brought by appellees, who are resident taxpayers in the city of Dallas, in their own behalf and in behalf of all other citizens of said city similarly situated. On application of appellants, the issuance of the writ of injunction awarded was duly suspended pending the final determination of an appeal to be perfected by appellants. Such appeal has been duly perfected to this court.

The allegations of the petition for injunction charge that said health department is being maintained in said public schools without lawful authority and by the illegal expenditure of large sums of money thus diverted from the legitimate purpose for which it was collected by the levy of taxes for the support of public free schools in the city of Dallas. The answer of appellants challenged the jurisdiction of the court to entertain said suit, because of the failure of appellees to seek relief by an appeal to the superintendent of public instruction, and, if necessary, to the state board of education, before filing the suit. Appellants also contended that the establishment and maintenance of said health department in the public free schools of said city in the manner and for the purpose same was maintained is legal and clearly within the discretionary powers of the board of education; that such health department is necessary for the proper discharge of the duty resting on said board to establish and maintain an efficient system of public free schools. These respective contentions present the controlling issues on this appeal.

It is disclosed by this record that Dallas is a city of over 200,000 inhabitants, and is in control of its public schools; that the board of education maintains 51 public free schools,

which are attended by approximately 40,000 pupils; that the school fund received annually from the state for the maintenance of public schools amounts to approximately $500,000, and that there is raised by special taxes levied for such purpose approximately $1,800,000; that the entire fund thus received is administered by the school board for the maintenance of the said 51 schools; that for several years past, in addition to the instruction given for the primary purpose of developing the mental powers of the children attending these schools, a course of physical training has also been maintained looking to a proper physical development of the children; and that, in furtherance of this purpose, there have been regularly employed a number of playground supervisors who supervise the play indulged in by the pupils, to the end that it will be an aid to the proper development of their physical powers.

It is also disclosed by this record that a very large number of pupils, especially in the primary grades, suffer from physical defects that are not easily discernable and frequently unknown either to the parents, the teachers, and the playground supervisors; that the mental growth and development of a pupil, especially in his early school life, is largely dependent on his physical condition, and in many instances the failure of pupils to pass their year's work is traceable to physical deficiency; that these physical deficiencies in many instances can be readily removed when the cause is known, and, if known by the teacher, their hindrance to mental development can be lessened by an intelligent planning of the school work based on such knowledge. It also appears from this record that the failure of a few pupils in any one schoolroom to do the work of that room greatly retards the advancement of the entire room and thereby lessens the efficiency of the schools. It is also disclosed by this record that there is such a general recognition by educational authorities of the efficiency of a well-directed health department in public schools that all of the larger cities are maintaining a department similar to the one established in the public free schools of the city of Dallas.

After a careful investigation of the working of health departments in other cities by the school authorities of the city of Dallas, and believing that the efficiency of the city's free schools would thereby be increased, the board of education, by resolution duly adopted, established this department, and it was in force for the school year 1925–26. An appropriation of $30,000, or so much thereof as necessary, was duly made from the funds derived from the special taxes levied by the city of Dallas for maintaining its public schools, for the establishment and maintenance of said health department. A competent physician was employed as superintendent of this department at a salary of $4,000 per year, and such physician is required to devote his entire time to this work. A competent woman physician was employed as assistant superintendent at a salary of $2,500 per year, and she is required to devote her entire time to the work. Six women nurses were employed for the school year of nine months, each at a salary of $125 per month. During a portion of the year a dentist was employed at a salary of $2,000; such dentist, however, was not in said department at the time of the filing of this suit, and is not now connected therewith, but it is assumed that a competent dentist will be employed in the future.

The school board adopted certain rules to be observed by those in charge of this department and under which the work of the department is to be done. These rules are as follows:

"(1) Neither the direction of school health work nor any employé of the school health department shall forbid children entrance to or attendance at any school. In case any child is suspected of having an infectious disease, the city health officer shall be notified, and in the meantime, unless other instructions are received from that officer, the child shall have the option of the following: (a) Returning home, (b) going to the office of the city health department, or (c) remaining at school in isolation until the arrival of the city health officer or the close of the school day.

"(2) The director of school health work and his assistants shall from time to time make physical examinations of all children in the public schools except those whose parents or guardians object thereto and except those who have been physically examined during the school year in connection with the R. O. T. C. or other school activities.

"(3) All physical examinations of girls, other than eye, ear, nose, throat, oral, and similar minor examinations, shall be made only by women physicians in the presence of at least one other woman.

"(4) Parents and guardians, who desire that their children shall not be examined, may notify in writing the principal of the school attended by their child of their objection, and such child shall not be examined.

"(5) Parents and guardians shall have the right to be present at any examination of their child, and, upon written request made to the principal of the school attended by their child, they shall be notified of the time and place at which such child shall be examined.

"(6) A careful written record of each examination, together with the recommendation, if any, of the examining physician in regard to the necessity and character of corrective measures desirable, shall be made and preserved at the school attended by the child, and such record shall be open to inspection by the parents or guardians of the child at any reasonable time. In case the examining physician deems it desirable, he may make to the parents or guardians a special report of the child's physical condition and his recommendations in regard thereto.

"(7) Except in cases of emergencies, requiring first aid measures, no treatment shall ever be given. Parents or guardians, who desire to follow the directions of the director of school health work, shall employ physicians of their

own selection or shall make use of one of the free clinics available in the city.

"(8) No school physician or other employé of the school health department shall accept any professional employment from any patron of the schools or receive any character of compensation from a patron for professional services rendered to any child.

"(9) At the time of making examinations in any school, the principal thereof shall be given the names of all children found to have physical defects of consequence. The principal shall in turn notify the child's teacher and his playground or gymnasium instructor of the child's condition. Thereupon the teacher, in so far as is possible, shall adjust the child's work and conditions of study to his physical condition, and the playground or gymnasium instructor shall see that the child is given proper corrective physical training and does not engage at school in sports or exercises dangerous or harmful to him; provided that such physical training and supervision of play shall not be accorded any child whose parents or guardians object thereto.

"(10) The director of school health work and his assistants, in conjunction with the supervisor of physical education and playground activities, shall carry on suitable instructional work in the schools in regard to problems of health and hygiene, and shall in every proper way foster the teaching of correct health habits among teachers and children."

The evidence discloses that these rules were faithfully observed by those in charge of said department. The record also discloses that, prior to the establishment of said health department there had been set aside in various buildings a room to which children who had become ill or who had been injured in play could be carried awaiting the arrival of their parents, and that these rooms are used by the health department for a physical examination of the children.

The evidence tends to show that the work of the health department has added to the efficiency of the public free schools, and, further, that it is the purpose of the school authorities to continue the health department in the public free schools of the city of Dallas on the same basis and in the same manner such work has been done during the past year, unless restrained from doing so.

[1-3] Appellants have duly assigned error on the action of the trial court in overruling their plea in abatement. The specific ground on which the plea in abatement was urged is that, as the petition of appellees discloses that no appeal was prosecuted by them from the action of the board of education in overruling their protest to the establishment of said department of health and in making the appropriation of school money for that purpose, to the state superintendent of public instruction, and, if necessary, to the state board of education, this suit cannot be maintained. This contention is based on a provision in article 2656, R. C. S. 1925, which reads as follows:

"The state superintendent shall be charged with the administration of the school laws and a general superintendency of the business relating to the public schools of the state, and he shall have printed for general distribution such number of copies of school laws as the state board of education may determine. He shall hear and determine all appeals from the rulings and decisions of subordinate school officers, and all such officers and teachers shall conform to his decisions. Appeal shall always be from his rulings to the state board. * * *"

If the allegations in appellees' petition are susceptible to the construction that the board of education only abused its discretion either in establishing the said health department or in the manner in which it is maintained, then we think appellants' position would be well taken. We cannot agree with appellees that, because section 1 of article 5 of the charter of the city of Dallas provides that the board of education created by said section "shall have exclusive control of the public schools of the city of Dallas," that the state superintendent is thereby divested by this special legislative act of all power of supervision of the public free schools within said city. Such has not been the construction of our higher courts in reference to similar provisions in city charters. Atkins v. Heard (Tex. Civ. App.) 163 S. W. 127; South San Antonio School District v. Martine (Tex. Civ. App.) 275 S. W. 265; Jennings v. Carson (Tex. Com. App.) 220 S. W. 1090.

The petition in the instant case does not charge an abuse of discretion that could be legally exercised by the board of education, but charges that doing of acts beyond its power and concerning which it had no discretion, and that, in furtherance of such unlawful acts, it is diverting public money, coming into its possession for a special purpose. We do not believe it was the intention of the Legislature in the above-quoted enactment to close the door of the courts to taxpayers in cases of misapplication of public school money by public officers, charged with its proper expenditure, until the slow processes of appeal have been perfected to the state superintendent of public instruction and the state board of education, who are not vested with judicial powers. We think the appeal authorized by the said statute is from purely administrative matters in the conduct of the schools by boards of education.

A writ of injunction will properly issue to restrain the diversion of public funds intrusted to public officers for special use. Walker v. Walter (Tex. Civ. App.) 241 S. W. 524; Elder v. Hamilton (Tex. Civ. App.) 227 S. W. 243; El Paso Union Passenger Depot v. Look (Tex. Civ. App.) 201 S. W. 714. We therefore hold that the court did not err in overruling appellants' plea in abatement.

[4, 5] Was the establishment of said health department within the discretionary powers of the said board of education? The board of

education is under the duty of establishing and maintaining for the city of Dallas an efficient school system. This is the mandate of the Constitution of the state of Texas, and of the charter of the city of Dallas. In order to effectuate this high purpose, said board has the discretion to exercise any power relating to the school system of said city, not prohibited by law, which it believes will accomplish this result. Among the enumerations of. the powers conferred on the said board of education by section 1 of article 5 of the Dallas City Charter is:

"To employ superintendents, teachers and such other persons as may be necessary, and to fix their compensation and prescribe their duties, and to establish all such regulations and rules deemed necessary by the board to provide and maintain an efficient system of public schools in the city of Dallas."

Article 2827, 1925 Revised Statutes, places an express limitation on the power of a school board in the expenditure of school funds. Section 1 of said article limits the expenditure of the state and county available funds to be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census and interest on money borrowed on short time to pay salaries of teachers and superintendents when these salaries become due before the school fund for the current year becomes available. Section 2 of said article limits the expenditure of local school funds derived from taxes, tuition fees, and other local sources, to the above-named purposes and also for purchasing appliances and supplies, for the payment of insurance premiums, janitors, and other employés, for buying school sites, buying, building, and repairing and renting schoolhouses, and for "other purposes necessary in the conduct of the public schools, to be determined by the board of trustees. * * *" It must be remembered that none of the state and county available school funds were used by the board in establishing and maintaining the said health department, but the expense of this department is borne entirely by the local school fund.

It is apparent, therefore, that the correct solution of the question under inquiry is dependent largely on whether the said health department, as it is maintained by the said board of education, has for its primary purpose improving the efficiency of the system of public schools for the city of Dallas. As shown by the rules governing said department, by means of the records made of the physical examination of the pupils, the teachers are informed of the physical condition of the children under their instruction and said teachers are thereby enabled intelligently to diagnose the mental aptitude and powers of such pupils and to direct their teaching in the light of such knowledge. The parents are informed of the physical defects, in many instances curable, that may hinder the mental progress of their children, and thereby given opportunity to have such defects as will yield to treatment corrected. Those in charge of the health department are also required to instruct the teachers and pupils in reference to the laws of health and hygiene, and the children are thereby enabled to pursue their education under more favorable conditions than would otherwise obtain. The directors of the playground activities, where the children are given the necessary healthful exercise, are enabled to judge the amount of exercise and character of play in which those children who are physically deficient can engage without endangering their health.

As shown by this record, the work of the health department in the public free schools of the city of Dallas is within itself educational and instructive on matters directly related to the efficiency of such schools, and tends to their betterment. This being true, its establishment and maintenance as a part of the public free school system of Dallas are within the lawful discretion of the board of education.

In the case of State ex rel. Stoltenberg v. Brown, City Comptroller, 112 Minn. 370, 128 N. W. 294, the Supreme Court of Minnesota, in passing upon a similar contention under similar conditions, uses the following language that is very applicable to this case:

"The purpose of the corporation [the school district for the city of Minneapolis] is to maintain efficient, free, public schools within the city of Minneapolis, and, unless expressly restricted, necessarily possesses the power to employ such persons as are required to accomplish that purpose. Education of a child means much more than merely communicating to it the contents of text-books. But, even if the time were to be so limited, some discretion must be used by the teacher in determining the amount of study each child is capable of. The physical and mental powers of the individual are so interdependent that no system of education, although designed solely to develop mentality, would be complete which ignored bodily health. And this is peculiarly true of children whose immaturity renders their mental efforts largely dependent upon physical conditions. It seems that the school authorities and teachers coming directly in contact with the children should have an accurate knowledge of each child's physical condition, for the benefit of the individual child, for the protection of the other children with reference to communicable diseases and conditions, and to permit an intelligent grading of the pupils."

[6] The rights of parents and guardians are fully recognized by the board of education in the execution of the work of this department. No child is examined if the parent or guardian objects. No child is denied the right to attend school because of refusal to submit to examination. No medical treatment is attempted to be forced on the parent or guardian, and he is left entirely free as to whether he will have his child treated and by whom such treatment shall be given. Under said rules the right of the city health department

is in no way infringed upon and its work is in no way duplicated. The two departments are essentially different and organized for essentially different purposes.

We are of the opinion that the school board was acting under an authorized legal discretion when it organized and installed the health department for the purposes for which same was organized, and that it is being conducted for a lawful and commendable purpose, and has increased the efficiency of the school system of the city of Dallas. It therefore follows that, in our opinion, the trial court erred in granting the injunction, and that said cause should be reversed, and the injunction denied.

Reversed, and rendered for appellant.