**BOYDSTUN et al. v. FORT WORTH INDE-PENDENT SCHOOL DIST. et al.**

No. 12482.

Court of Civil Appeals of Texas. Fort Worth.
Sept. 20, 1930.

Rehearing Denied Oct. 11, 1930.

S. F. Houtchens, of Fort Worth, for appellants.

R. M. Rowland, of Fort Worth, for appellees.

CONNER, C. J.

The city of Fort Worth has established a system of public schools which, under regulations that need not be mentioned, are controlled by a board of trustees selected by a vote of the people. Among other school buildings there are located in North Fort Worth two high schools, one designated as the Diamond Hill High School, situated in the eastern part of that section of the city, the other designated as the Senior High School, located in the western part of that section of the city. On the evening of August 27, 1930, the board of trustees referred to and M. H. Moore, the superintendent of all the city schools, made the following order, to wit:

"Committee on organization submitted the following report: The question of Diamond Hill High School upon motion made by Mr. Boswell, which was duly seconded by Mr. Elder,

"It was,

"Resolved: That the Diamond Hill School be organized as a Junior High School for grades six, seven and eight, and the pupils for that school in grades nine, ten and eleven be accommodated in North Side High School."

On September 15, 1930, J. J. Boydstun and 31 other resident citizens adjacent to and patrons of the Diamond Hill High School, suing for themselves and others similarly situated, made application to this court for a temporary restraining order, seeking to enjoin said M. H. Moore and the board of trustees from enforcing the order above copied, or in any other manner interfering with said high school in a way of change or movement from the Diamond Hill High School to the North Fort Worth High School. Upon the filing of the petition, this court on the same day granted a temporary injunction or restraining order in accordance with the prayer of the petition. The restraining order was made effective until a further order of this court, with direction that the petition be filed and the cause set down for hearing at 9 o'clock a. m. of the next day, to wit, September 16, 1930. At the hour and date stated, all parties to the action appeared, and a hearing was duly had, and the questions presented in the verified petition of the plaintiffs and the verified answer of defendants Moore and the board of trustees are now before us for determination.

The high schools named are approximately two miles apart. It appears from the allegations in the petition that the Fort Worth Independent School District is a corporation duly incorporated and existing as one of the school entities of the state under and by virtue of general and special laws and the charter of the city of Fort Worth, with a governing body of said trustees; that the Diamond Hill High School has been conducted as such since in July, 1922, including the ninth, tenth, and eleventh grades; that it is equipped with abundant room and ample equipment for the accommodation of all students having the right to attend said school; that the school has an enrollment of approximately 900 pupils, with some 200 in its high school and some 130 within the grades affected by the board's order; that an enforcement of the order will result in depriving many of the Diamond Hill pupils in the grades mentioned of an education, for the reason that neither they nor their parents nor any one responsible for their upkeep and education have sufficient means to meet the cost of their transfer or change; that the transportation of the pupils in the grades mentioned would be 5 cents for each student under the age of 17 years and 10 cents each for others older, in addition to which there would be an average cost of 20 cents per day for each pupil for lunches. It was further alleged that the North Fort Worth High School buildings were already crowded and overflowing with pupils of all grades and temporary buildings would be necessary to accommodate additional pupils, thus imposing increased expense and burdens of taxation, that intervening be-

tween the schools in question there are in operation a large number of railway lines and streets having heavy traffic, and that the lives and limbs of students of the Diamond Hill High School attending the North Fort Worth High School would be in danger. Other allegations of a similar nature need not, we think, be mentioned.

We will add, however, that it further appears from the allegations of the petition that the opening of the public schools for the current year was fixed for September 11, 1930, and it was alleged that the complainants "verily believed that said acts upon the part of the defendants in holding their said meeting on the 27th day of August, 1930, and in entering and making the order above referred to was held and made on said date for the purpose of depriving these complainants of their valuable rights of appeal to the educational authorities of the state before the opening of the schools so as to disrupt said school before any opportunity of appeal could be had by complainants and that such movement was in contemplation of defendant Moore for many months before said date of August 27, 1930."

It was further alleged that on the 11th day of September, 1930, an application was made to the honorable judge of the Ninety-Sixth judicial district court for a mandatory writ of injunction, enjoining the defendants from carrying out said order of August 27th; that said temporary writ of injunction was granted, effective until a disposition of the controversy should be made by the superintendent of public instruction and the educational board of the state of Texas, from which judgment the defendants have appealed to this court by filing a supersedeas bond granted by the trial court. The record on the appeal here referred to, however, is not yet before us, and we shall therefore not undertake to review the proceedings on that hearing.

We have concluded, after as careful an examination as we have been able to make during the limited time we have had for its determination, that the petition of the complainants now before us must be denied.

Article 2768, section 3, chapter 13, of title 49, Rev. Civ. Statutes of 1925, relating to public education, reads as follows: "Any city or town in this State may acquire the exclusive control of the public free schools within its limits. Any city or town which has heretofore, under the Act of March 15, 1875, or any subsequent law, assumed control of the public free schools within its limits, and has continued to exercise the same until the present time, or any city or town which may hereafter determine so to do by majority vote of the property tax payers of said city or town voting at an election held for that purpose, may have exclusive control of the public free schools within its limits."

It is in effect conceded that the city of Fort Worth has duly acquired the exclusive control of the public free schools within its limits. It is further conceded that the defendant M. H. Moore is the superintendent of the public schools of the city, and the other defendants are the duly elected, qualified, and acting trustees. Article 2780 of said section 3 reads as follows: "Said trustee shall adopt such rules, regulations and by-laws as they may deem proper; and the public free schools of such independent district shall be under their control; and they shall have the exclusive power to manage and govern said schools, and all rights and titles to property for school purposes heretofore vested in the mayor, city councils, or school trustees by articles 3995, 4013 and 4032, Revised Statutes of 1895, or other statutes, general and special, except such cities as are exempted by this title, shall be vested in said board of trustees and their successors in office; and their claims shall apply to any action or suit which may arise to which said board is a party."

■ By the terms of that article the public free schools of an independent district are declared to be under the control of the trustees, and "they shall have the exclusive power to manage and govern said schools." It has been repeatedly held that, in the absence of circumstances not appearing in this case, the power thus given to trustees of an independent school district is exclusive and precludes any power on the part of the courts to interfere with or control the good-faith action by them. See Johnson v. City of Dallas, 291 S. W. 972, by the Dallas Court of Civil Appeals; County Trustees v. Bell Point School District (Tex. Civ. App.) 229 S. W. 697; Campbell v. Moore (Tex. Civ. App.) 12 S.W.(2d) 806. In the case last cited, the suit was one to enjoin trustees of a school district from interfering with patrons of another district to operate their school and from removing school equipment and tearing down the school building, and it was distinctly held that the remedies for the relief of such matters must be exhausted before applying to the courts for relief.

Our laws also provide for the election of a superintendent of public free schools of the state and for a state board of education. The state board of education is required to meet once in every three months at the capitol in Austin, and at such other times as may be designated by the president, or it may meet upon call of any three members of the board. See page 86, First Called Session, Forty-First Legislature, chapter 39. Our laws also provide that the state superintendent shall have "a general superintendency of the business relating to the public schools of the State, and * * * he shall hear and determine all appeals from the rulings and decisions of subordinate school officers, and all such officers and teachers shall conform to his decisions. Appeal shall always be from his rulings to the State Board." See article 2656, Rev. Statutes of 1925. It is held that the decisions of the state superintendent are final unless reversed by the state board of education, and courts will not interfere unless there is clear abuse of his discretionary powers or the law, and they will not consider whether his decision is wise or expedient. State ex rel. Marrs, State Sup., et al., v. Abshier, 263 S.W. 263, by the Commission of Appeals.

In the case of Donna Ind. School District v. First State Bank (Tex. Civ. App.) 227 S. W. 974, 975, it is said: "It seems to be the fixed policy of the Legislature to create an educational system of public free schools that is sufficient unto itself and free as far as practical from any interference by the judiciary. The courts fully recognize the desire of the legislative branch of the state government and uniformly hold that the remedies provided for before school authorities must be exhausted before the courts will interfere"—citing Nance v. Johnson, 84 Tex. 401, 19 S. W. 559; Cochran v. Patillo, 16 Tex. Civ. App. 438, 41 S. W. 537, 538; Plummer v. Gholson (Tex. Civ. App.) 44 S. W. 1, 3; McCollum v. Adams (Tex. Civ. App.) 110 S. W. 526; Independent School Dist. v. Dudney (Tex. Civ. App.) 142 S. W. 1007; Jennings v. Carson (Tex. Com. App.) 220 S. W. 1090. See, also, Huntington Independent School Dist. v. Scroggins (Tex. Civ. App.) 9 S.W.(2d) 171.

■ The plaintiffs in the petition before us do not seriously contest the general rules announced in the foregoing authorities, but it is alleged that, since the hearing in the Ninety-Sixth district court and prior to the hearing of the petition before us, an appeal has been taken by the plaintiffs to S. M. N. Marrs, state superintendent of public instruction, and that he has sustained the ruling of Superintendent Moore of the city and the board of trustees in the order made by them and herein complained of, and it is urged that the plaintiffs expect to appeal from the decision of Superintendent Marrs to the state board of education and that, to protect them from the inconvenience, hardships, expenses, and dangers alleged by them until the board of education meets and reviews the proceedings in question, this court has jurisdiction to issue the temporary restraining order or injunction prayed for, and the opinion on rehearing by the lamented Judge Neill of the San Antonio Court of Civil Appeals (McCollum v. Adams), reported in 110 S. W. 526, 528, is cited. That was a case in which Adams and others sought to enjoin the defendants from paying out certain school funds and compel them to use the funds for the maintenance of the school. The district

court awarded the injunction as prayed for, but the Court of Civil Appeals reversed the judgment and dismissed the action, citing authorities in harmony with those we have cited. On rehearing, however, it was contended that it would have been impossible to obtain a ruling of the superintendent of public instruction upon the action of the trustees of the school district, and hence that the injunction should have been permitted to stand. The motion was overruled, but, in overruling the motion, the court said: "The administration of the school laws and general superintendency of business relating to public schools of this state cannot be interfered with by the courts until the ruling of the superintendent of public instruction has been invoked upon the matter in controversy, unless the parties aggrieved cannot obtain a ruling from him on the question in time to protect their rights. In such an event the interference by the courts cannot extend beyond the time the question is decided by him, or, in the event of an appeal from his ruling to the State Board of Education, it is decided by such board, unless such decision is clearly wrong."

As before noted, there is an allegation that the plaintiffs believed that the acts on the part of the defendants in entering the order complained of were made at that time for the purpose of depriving the complainants of their right of appeal to the educational authorities before the opening of school. But the petition fails to state the fact to so be. It merely states the belief of plaintiffs, and, in the defendants' answer, we find the verified statement that their action in that respect was in good faith, and nothing in the record or pleadings indicates fraud or corrupt motive. Nor has our attention been called to any law which provides for notice to interested parties and a hearing before orders of the kind involved in this action can be made. Under such circumstances, the intimation that if, in a given case, it appeared that time to prosecute an appeal from a ruling of the superintendent and board of trustees of an independent school district did not exist, then the court would have jurisdiction to interfere and restrain the action complained of, was not involved in that case, is pure dictum, and we are not inclined to apply it in the case before us. Under the authorities of the state board of education to fix its terms of meeting, the plaintiffs may, for aught that appears, speedily have a hearing before that board on appeal from the ruling of the state superintendent, Marrs, and while, in the meantime, the patrons and students in grades 9, 10, and 11 of the Diamond Hill High School may suffer some inconvenience and hardship, it is better that that should be endured than that the courts should undertake, upon the facts alleged, to exercise authority and powers vested by law in the defendants superintendent and trustees.

The application for writ of injunction is denied.

### On Motion for Rehearing.

In the motion for rehearing, relators insist, among other things, that we erred in denying the application under consideration in advance of a review and determination of the appeal from the order of the Ninety-Sixth district court, which had granted a temporary writ of injunction, as was in that proceeding sought.

It is to be noted, however, that the appeal referred to had not been fully perfected by filing in this court the transcript and statement of facts, and hence the order in that proceeding was not before us for determination. Moreover, the district court permitted the filing of a supersedeas bond which had the effect of suspending its order, Houtchens v. Mercer (Tex. Com. App.) 29 S. W.(2d) 1031, 69 A. L. R. 1103, and the application herein involved is an original one, in no wise affected by the action of the district court.

Other questions we think are sufficiently disposed of in our original opinion, and the motion for rehearing is accordingly overruled.