

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 11, 1949

Honorable L. A. Woods            Opinion No. V-840.
State Superintendent
Department of Education          Re: Legality of Zoning Resolution
Austin, Texas                         by San Marcos Independent
                                      School District.

Dear Sir:

The Board of Trustees of the San Marcos Independent School District established zoning within the district as a means of designating the elementary schools which the children in each zone shall attend. This was accomplished by the Board in the form of a resolution which you have presented to us along with a letter asking:

"... whether this resolution complies with the decision in the Delgado Case, as our approval or disapproval of this zoning matter rests primarily upon this fact."

The resolution in substance reorganizes the school district into three wards and provides that pupils in each ward are to attend a designated school. It states in great length the necessity for such changes enumerating among other things limited school facilities, change in population, the dangers of traffic, and other hazards under the present plan.

At the outset we are confronted with the question of the power of the School Board to create zones and assign students from each zone to a particular school. In this regard, Art. 2780, V.C.S., provides:

"Said trustees shall adopt such rules, regulations and by-laws as they deem proper; and the public free schools of such independent district shall be under their control; they shall have the exclusive power to manage and govern said schools, and all rights and titles to property for school purposes...."

It is settled in this State that the Boards of Trustees of independent school districts are vested with the duty and discretion to manage and regulate the schools of their respective districts and to administer the affairs of those schools in such a manner as in their judgment best accomplishes the wholesome

objects of our public educational policies. Bishop v. School District, 119 Tex. 403, 29 S.W.2d 312 (1930); Adams v. Miles, 300 S. W. 211 (Tex. Civ. App. 1927).

In the case of Boydstun v. Ft. Worth Independent School District, 33 S.W.2d 811 (Tex. Civ. App. 1930), the School Board reorganized, among other things, the geographic boundaries of certain schools. Some pupils were required to attend schools more distant from their home. The Court of Civil Appeals refused to set aside this action, and in so doing stated:

"By the terms of that Article (2780) the public free schools of an independent school district are declared to be under the control of the trustees, and 'they shall have the exclusive power to manage and govern said schools.' It has been repeatedly held that, in the absence of circumstances not appearing in this case, the power thus given to trustees of an independent school district is exclusive and precludes any power on the part of the courts to interfere with or control the good-faith action by them."

It is apparent from the foregoing that the power to promulgate zoning resolutions is within the authority and discretion of the Board of Trustees.

Having determined that the Board has the authority to promulgate a resolution such as the one submitted, it is necessary to scrutinize the one adopted to determine whether the School Board exercised its power in a manner which is consistent with the law.

In Delgado v. Bastrop Independent School District, (W. D. Tex. 1948, unreported), Judge Rice ruled:

"The regulations, customs, usages, and practices of the defendant, Bastrop Independent School District of Bastrop County . . . insofar as they or any of them have segregated pupils of Mexican or other Latin American descent in separate classes and schools within the respective school districts of the defendant school district heretofore set forth are, and each of them is, arbitrary and discriminatory and in violation of the plaintiff's constitutional rights as guaranteed by the Fourteenth Amendment to the Constitution of the United States, and are illegal. . . . The defendants . . . are hereby permanently restrained and enjoined from segregating pupils of Mexican or other Latin American descent in separate schools and classes in the respective school district of said

> defendant, and each of them, and from denying said
> pupils use of the same facilities and services enjoy-
> ed by other children of the same ages and grades;
> . . ."

Since there is no statutory or constitutional authority for the separation of students other than those of the Negro race in our public schools, it follows that should the resolution provide for the segregation of students of any other race or ancestry it would be unconstitutional. This resolution, however, provides:

> "AND, BE IT FURTHER RESOLVED, that all
> scholastics, regardless of ancestry or racial deriva-
> tion or origin, enrolled in grades one to six, inclu-
> sive, of the schools of this District and residing with-
> in Zone or Ward No. One, shall attend only the South
> Side Elementary School and no other school of this
> District.

> "AND, BE IT FURTHER RESOLVED, that all
> scholastics, regardless of ancestry or racial deriva-
> tion or origin, enrolled in grades one to six, inclu-
> sive, of the schools of this District and residing with-
> in Zone or Ward No. Two, shall attend only the Cam-
> pus Elementary School and no other school of this
> District.

> "AND, BE IT FURTHER RESOLVED, that all
> scholastics, regardless of ancestry or racial deriva-
> tion or origin, enrolled in grades one to six, inclusive,
> of the schools of this District and residing within
> Zone or Ward No. Three shall attend only the Cam-
> pus Elementary School and no other school of this
> District. . . ." (Emphasis is added throughout this
> opinion.)

The resolution on its face is valid. It affirmatively recites that children of other than the Negro race must attend the school assigned to the zone of his residence "regardless of an-cestry or racial derivation or origin." There is nothing in the resolution to indicate that there was any intention on the part of the Board to discriminate against or segregate members of any group. The resolution by its terms does not separate Latin and Anglo American students. On the contrary, it expressly provides that regardless of ancestry or racial derivation the students liv-ing in the respective zones must attend the school designated and no other.

The Courts have allowed school authorities wide discretion in the designation of school zone areas. Whether or not the geographic zoning is reasonable is a question of fact depending on all the facts and circumstances which must be considered. The decision of the school board will not be disturbed unless it is clearly shown to be arbitrary, capricious, and without justification in fact.[1] The courts in the great number of the cases have upheld the zoning regulations of the school authorities, despite the fact that in some instances inconvenience might result.[2]

On the other hand, a regulation which appears to be valid on its face may, in actual practice, be applied or administered in such a way as to cause violation of the rights of individuals or groups. This is true with regard to those rights secured by the Fourteenth Amendment of the Federal Constitution. The course of action which the courts and administrative agencies will follow in such a situation is best stated in Yick Wo v. Hopkins, 118 U.S. 356 (1886). There the United States Supreme Court stated:

" . . . In the present case we are not obliged to reason from the probable to the actual, and pass upon the validity of the ordinances complained of, as tried merely by the opportunities which their terms afford, of unequal and unjust discrimination in their administration. For the cases present the ordinances in actual operation, and the facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion, that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the State itself, with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions

---

[1]Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20 (1931); State ex rel. Marrs v. Abshier, 263 S.W. 263 (Comm. App. 1924); County School Trustees v. Common School District No. 6, 284 S. W. 306 (Tex. Civ. App. 1926).

[2]Roberts v. Boston, 5 Cush. (Mass.) 198 (1849); Wright v. Board of Education of City of Topeka, 284 Pac. 363 (Kan. Sup. 1930); Lehew v. Brummell, 15 S.W. 765 (Mo. Sup. 1891); cf. Williams v. Board of Education, 99 Pac. 216 (Kan. Sup. 1908); see also Annotation, 103 A.L.R. 713, 715.

of the Fourteenth Amendment to the Constitution of
the United States. Though the law itself be fair on its
face and impartial in appearance, yet, if it is applied
and administered by public authority with an evil eye
and an unequal hand, so as practically to make unjust
and illegal discriminations between persons in simi-
lar circumstances, material to their rights, the denial
of equal justice is still within the prohibition of the
Constitution. . . ."

This course of action has been followed by the courts with great
consistency. One of the most recent Federal cases applying it is
Davis v. Cook, 80 F.Supp. 443 (N.D. Ga. 1948).

     Latin American students cannot be segregated because
of their ancestry. Whether the San Marcos zoning resolution, val-
id on its face, in fact establishes an unlawful segregation of Latin
American students is a question of fact to be determined by the
State Superintendent of Public Instruction.

     The question of the proper administration of an order
valid on its face is also an issue of fact. The primary responsi-
bility for determining these fact issues is placed upon the School
Board. An appeal from its ruling may be taken through the vari-
ous agencies in the Department of Education. Art. 2656, V.C.S.
These questions may be presented to the court after administra-
tive remedies have been exhausted.[3] The courts will then deter-
mine if there is substantial evidence to support the order in ques-
tion. The order will not be disturbed unless clearly arbitrary and
capricious.[4] In all such cases the legal presumption is that public
officials have done and will do their duty.[5]

---

[3]Cook v. Jackson, 130 Tex. 337, 109 S.W.2d 160 (1937); Nance
v. Johnson, 84 Tex. 401, 19 S.W. 559 (1892); Boydstun v. Ft. Worth
Independent School District, supra.

[4]Ibid, Note 1, supra.

[5]Schroeder v. Brandon, 141 Tex. 319, 172 S.W.2d 488 (1943);
Mexia Independent School District v. City of Mexia, 134 Tex. 95, 133
S.W.2d 118 (1939); Bishop v. Houston Independent School District,
119 Tex. 403, 29 S.W.2d 312 (1930); Thompson v. Consolidated Gas
Utilities Corporation, 300 U.S. 55 (1937).

## SUMMARY

The San Marcos Independent School District has the legal power and authority to make zoning regulations, and the zoning resolution adopted by such District is valid on its face. The legal presumptions are in support of the order and that the public officials have and will do their duty. However, Latin American students cannot be segregated because of their ancestry; and whether the resolution, valid on its face, in fact establishes an unlawful segregation of Latin American students is a question of fact to be determined, under the facts submitted, by the State Superintendent of Public Instruction. An Appeal may be had to the courts after the exhaustion of administrative remedies.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By:　/s/　E. Jacobson
　　　　　E. Jacobson
　　　　　Assistant

　　　　/s/　Joe H. Reynolds
　　　　　Joe H. Reynolds
　　　　　Assistant

EJ, JHR:erc:mwb

APPROVED:

/s/ Price Daniel

ATTORNEY GENERAL