Earl A. McINTYRE, Jr., et al., Appellants,

v.

Stash HOBLINSKI et al., Appellees.

No. 3713.

Court of Civil Appeals of Texas.

Waco.

March 3, 1960.

Rehearing Denied March 24, 1960.

Bryan, Maxwell, Wilson & Olson, Waco, for appellant.

Beard, Kultgen & Beard, Waco, J. P. Darrouzet, Austin, Will Wilson, Atty. Gen., for appellee.

WILSON, Justice.

The only issue before us is whether plaintiffs are legally required to exhaust administrative remedies before the trial court may assume jurisdiction. There is not before us at this time any question as to whether the principle of separation of church and state has in fact been violated.

Plaintiffs, as taxpayers, alleging they were class representatives of all other interested citizens and taxpayers, instituted this action for declaratory judgment and injunction in Travis County against the Board of Trustees of Bremond Independent School District, its Superintendent, the State Commissioner of Education, the members of the State Board of Education, the State Comptroller and certain teachers in the school district alleged to be members of Catholic religious orders. The Travis County District Court sustained pleas to the jurisdiction and in abatement as to the state officials, dismissing the action as to them. The cause was then transferred to Robertson County on the pleas of privilege of the other defendants.

The petition alleges in substance that "an actual controversy exists between plaintiffs and defendants" (1) as to whether or not St. Mary's school at Bremond is under exclusive control of the state or a subdivision thereof as provided by law, or whether it "is in fact under the control and supervision of the Catholic Church" and is "in fact a Catholic parochial school illegally subsidized by public funds"; (2) whether children in the school are deprived of religious freedom; (3) whether defendants are requiring children to participate in religious services prohibited by law; (4) whether the school is free from denominational and sectarian control, influence and teaching; (5) whether a separation of church and state exists in the school; (6) whether a "tax-supported school can be conducted in a building owned by the Catholic Church or its religious orders" forming an integral part of the church by location and proximity; (7) whether the transportation of children to the school by public school buses and the furnishing of free textbooks to its students is in violation of constitutional provisions.

It is alleged that St. Mary's school in Bremond is owned by the church and is either donated by or rented from it by the school district for school purposes. Numerous circumstances relating to the manner of conducting the school are pleaded as a basis for the averments that it is a parochial school operated and maintained by tax funds, and that the use of public funds for its support as well as the manner in which it is administered contravenes various constitutional and statutory provisions.

The court sustained defendants' pleas in abatement asserting that plaintiffs failed to first exhaust administrative remedies by applying to the proper school authorities for relief, and dismissed the action without prejudice. Appellants contend the judgment of dismissal was erroneous because the acts alleged to have been done by appellees and the manner in which the school is permitted to be conducted were unlawful, and because the issues are beyond the jurisdiction of administrative agencies.

The trial court had no choice in the matter. The action was properly dismissed under firmly established rules consistently announced by the Supreme Court during several decades.

The general classification of matters requiring resort to school authorities before applying to the courts is summarized in Mission Independent School Dist. v. Diserens, 144 Tex. 107, 188 S.W.2d 568, 570, 161 A.L.R. 877: "It is a well-established rule that in all matters pertaining to the administration of school laws involving questions of *fact* as distinguished from *pure questions of law* resort must first be had to the school authorities and the method of appeal there provided for exhausted before the courts will entertain jurisdiction of a complaint with reference to such matters." The real matter sought to be submitted to

the trial court is not the legal effect of facts; it is investigation and determination of facts.

The "legislative intent and wholesome desire to keep school controversies, as far as possible, out of the courts" is declared in Palmer Pub. Co. v. Smith, 130 Tex. 346, 109 S.W.2d 158, 159, where in a mandamus suit seeking to require a superintendent's approval of a warrant, it was said:

> "If on the other hand he had by express or implied authority of statute any right of *'decision,'* either for a valid or invalid reason, plaintiff had to appeal before resorting to a mandamus suit. Obviously, the necessity for an appeal cannot be made to depend upon whether or not his reason was legal or illegal, arbitrary or otherwise. The right of appeal is given to correct an invalid decision, and the word 'decision,' as used here, is not to be understood in its strict judicial sense."

■ Plaintiffs' pleadings present matters pertaining to the administration of school affairs "involving questions of fact as distinguished from pure questions of law." As to these questions of fact the school authorities have a primary "right of decision" under the applicable statutory provisions, as to which courts will not assume jurisdiction until the administrative remedies are exhausted.

■ The rule of law in Texas applicable to this case is further announced in Warren v. Sanger Independent School District, 116 Tex. 183, 288 S.W. 159, 160, 161. It was there held that resort to school authorities must first be made before courts will be authorized to hear any complaint "as to a matter properly belonging to the administration of school laws". There the case involved the application of pure law to admitted fact, the threatened disbursement of current school funds to pay a debt covering a previous year's deficiency. This act was enjoined because it was void. The school authorities had no right of decision.

It is significant that the Supreme Court there cited on the present question South San Antonio Ind. School Dist. v. Martine, Tex.Civ.App., 275 S.W. 265, in which it was held the trial court had no jurisdiction of an action to enjoin trustees from permitting use of school property for sectarian, religious, fraternal or political purposes pending exhaustion of administrative remedies.

The Supreme Court then commented on the memorandum refusing the writ of error in the Martine case, 115 Tex. 145, 277 S.W. 78, saying: "We are not now going to the extent of the implication in that holding [in the memorandum], since there the matter of complaint related to the improper use of property *clearly under the general supervision of the board of trustees,* while here, as has been shown, the subject-matter is one not committed at all to the board."

These rules were applied in Nance v. Johnson, 84 Tex. 401, 19 S.W. 559, in which it was sought to enjoin payment of public school funds under allegations that a school taught by a member of a Baptist church in a building belonging to a Baptist association, organized, as the trial court found, "to advance the ends of their religious or sectarian association," was in fact a sectarian school. The Supreme Court repeated the conclusions of the trial court:

> "Citizens and taxpayers clearly have such interests in the maintenance of nonsectarian public schools and the lawful application of public free school money as entitle them to legal protection. The general conduct and administration of the school system, however, are by law intrusted to the state superintendent. * * * His decisions of controversies are legally binding on all subordinate officials, and they, as well as citizens, when feeling aggrieved, have a right to appeal to the state board of education * * *"

The trial court's language was further recited, to the effect that the power of courts to interpose their authority unless

exercised with great caution and in cases of imperative emergency, "is obviously liable to embarrass the efficient management of our school system," and in the absence of showing of efforts to correct or redress wrongs complained of by appeal to school authorities, judicial interference is not warranted. The Supreme Court after citing the applicable statute as to administrative appeals said,

"These remedies were open to the plaintiffs in this case, and, until they exhausted them, they were not entitled to an injunction."

That decision governs this.

In Bishop v. Houston Ind. School Dist., 119 Tex. 407, 29 S.W.2d 312, 314, the court cited in support of this rule Adkins v. Heard, Tex.Civ.App., 163 S.W. 127, in which the trial court granted an injunction under allegations that teachers employed by the school district were members of Catholic orders who wore religious dress, and that the school was conducted in a building belonging to a religious organization in which Sisters of Mercy lived; that religious services were held in the Catholic church a few feet away; that the teachers devoted their incomes from public school funds to charitable and religious uses of the church. It was alleged that the school was conducted in a sectarian manner in violation of law. In reversing the judgment and dismissing the bill, the rule was announced,

"Before the courts will assume jurisdiction, the remedies established by law for school government must first be exhausted, and, if it appear, either by pleadings or from the evidence, that those remedies have not been exhausted before suit was filed, the bill will be dismissed.

"The Legislature has seen fit to place the educational affairs of this state within the jurisdiction of a department created especially for that purpose, and has at the same time fixed the method of procedure by giving the right of appeal from the school boards to the county superintendent, and then to the state superintendent and board of education. That is, the primary jurisdiction and the judiciary will not assume jurisdiction in matters coming within the prerogatives of that department until the remedies therein provided are shown to have been exhausted. And when it is made to appear that those remedies have not first been resorted to, as it does in this case, the bill will be dismissed. * * *

"This court will assume that the department of education will correctly and faithfully discharge the duties incumbent upon it in all cases, and will never assume jurisdiction of matters placed by law in that department until those remedies are shown to have been resorted to and exhausted."

Appellants' points are overruled. The judgment is affirmed.