### ADAMS v. MILES et al. (No. 7940.)*

Court of Civil Appeals of Texas. San Antonio. Nov. 18, 1927.

Rehearing Overruled Dec. 14, 1927.

**1. Schools and school districts ☞10—Legislature has discretion to pass laws which it deems necessary and expedient to maintenance of public school system (Const. art. 7, §§ 1, 3).**

Under Const. art. 7, §§ 1, 3, making it the duty of the Legislature to suitably provide for maintenance of public school systems, Legislature has discretion to pass laws which it deems necessary and expedient to maintenance of schools, subject only to general limitations imposed on it by organic law.

**2. Schools and school districts ☞67—Legislature may empower local school boards to construct dormitories for teachers, if reasonably necessary to proper maintenance of schools. (Const. art. 7, § 1).**

Legislature has authority to empower local school boards to construct and operate dormitories for teachers in cases where such facilities are reasonably necessary to proper maintenance of local schools, under Const. art. 7, § 1.

**3. Schools and school districts ☞90—Trustees of common school districts have discretion to expend school funds for purposes reasonably necessary to maintain schools (Rev. St. 1925, arts. 2748, 2749, 2827).**

Under Rev. St. 1925, arts. 2748, 2749, 2827, relative to authority of trustees of common school districts, trustees may expend school

funds derived from local sources and surplus from state and county available school funds for purposes enumerated by statute, and such other purposes as in discretion of board of trustees may be reasonably necessary to maintain and operate schools.

**4. Schools and school districts ⟪93—Proposed appropriation by school district trustees of surplus funds for construction and acquisition of living quarters for teachers held not in excess of trustees' authority (Const. art. 7, § 1; Rev. St. 1925, arts. 2748, 2749, 2827).**

Proposed action of trustees of common school district in appropriating surplus in their hands to construction and acquisition of "schoolhouse" to be used in providing living quarters for teachers of school and for other purposes necessary in conducting school *held* not in excess of authority conferred by Const. art. 7, § 1 (Rev. St. 1925, arts. 2748, 2749, 2827).

**5. Schools and school districts ⟪93—Statute authorizing bond issuance for building teachers' homes is not exclusive and does not prevent school trustees' employment of surplus funds for that purpose (Rev. St. 1925, arts. 2748, 2749, 2797, 2827; Const. art. 7, § 1).**

Rev. St. 1925, art. 2797, authorizing issuance of bonds for purpose of buying sites and constructing teachers' homes in connection with district schools, does not prescribe exclusive mode of procuring improvement or restrict authority of school trustees to employ surplus funds for acquisition or construction of teachers' homes, under Const. art. 7, § 1 (Rev. St. 1925, arts. 2748, 2749, 2827).

**6. Schools and school districts ⟪111—District court had jurisdiction of suit to restrain alleged unauthorized act of school district trustees proposing to construct teachers' homes (Acts 40th Leg. 1927, c. 83, amending Rev. St. 1925, art. 2686).**

In taxpayer's injunction suit against county superintendent and school district trustees involving question whether defendants had authority under Constitution and laws to expend surplus school funds in construction of building for housing teachers, district court had jurisdiction, notwithstanding Acts 40th Leg. 1927, c. 83, amending Rev. St. 1925, art. 2686, which provides particular method of appeal in controversies arising in conduct of public schools.

**7. Schools and school districts ⟪90—Whether school district trustees having authority to construct teachers' homes may proceed with expenditure is matter of administration to be finally determined by higher school authorities (Const. art. 7, § 3; Rev. St. 1925, arts. 2748, 2749, 2827, and art. 2686 as amended by Acts 40th Leg. 1927, c. 83).**

Question whether school district trustees, authorized to expend money for constructing teachers' homes in connection with district school under Const. art. 7, § 3 (Rev. St. 1925, arts. 2748, 2749, 2827), may proceed in proposed expenditure is matter of administration to be finally determined in event of appeal by higher school authorities under procedure prescribed by Rev. St. 1925, art. 2686, as amended by Acts 40th Leg. 1927, c. 83.

Appeal from District Court, Jim Wells County; Hood Boone, Judge.

Suit by Robert Adams against Justin Miles and others, County Superintendent of Education of Jim Wells County, and trustees of Common School District No. 12, for injunction. From an order dissolving a temporary injunction, plaintiff appeals. Affirmed.

Perkins & Floyd, of Alice, for appellant.

L. Broeter, of Alice, for appellees.

SMITH, J. This appeal is from an order dissolving a temporary injunction, previously issued at the instance of a property taxpayer, to restrain the county superintendent of education of Jim Wells county and the trustees of common school district No. 12, of said county, from using the district school funds to construct "living quarters" for the use of the teachers of the district school. Two questions of law are raised by the appeal: First, does jurisdiction over the controversy rest with the higher school authorities or with the district court; and, second, have the local school trustees authority under the Constitution and statutes to appropriate surplus available school funds for the purpose of constructing a building for the use of the teachers in the district schools as living quarters?

It is declared and provided in section 1, art. 7, of the state Constitution, that:

"A general diffusion of knowledge, being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the state to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

It is also provided in section 3, art. 7, of the Constitution, that "one-fourth of the revenue derived from the state occupation taxes and a poll tax of one dollar" on every person subject to such tax shall be set apart annually "for the benefit of the public free schools"; that in addition thereto there shall be collected an ad valorem state tax of such an amount (not to exceed 35 cents on the $100 valuation) as with the available school fund arising from all other sources will be sufficient to "maintain and support" the public free schools of this state for a period of not less than six months in each year; that should these limits upon taxation result in a deficit the Legislature may meet such deficit by appropriation out of the general funds of the state; that the Legislature may also provide for the formation of school districts by general laws, for the assessment and collection of taxes in such districts, for the "management and control" of public schools of such districts, and for the authorization of an additional ad valorem tax within all school districts, "for the further maintenance of public free schools and the erection and

equipment of school buildings" in such districts.

[1, 2] The effect of these provisions is to declare it to be the policy of the state to establish and maintain public free schools throughout the state in terms of not less than six months in each year, and to expressly delegate to the Legislature the power and duty of carrying out this policy. In this delegation of authority no restrictions were placed upon the power of the Legislature, other than to limit the rate of taxation for school purposes. The result is that the Legislature may pass such laws as in its discretion it may deem necessary and expedient in effectuating the declared policy, subject only to the general limitations imposed upon it in the organic law. We think it is clear that under this power the Legislature is clothed with authority to empower local school boards to construct and operate dormitories for teachers in cases where those facilities are reasonably necessary to the proper maintenance of the local schools. This conclusion leads to the question of whether under the statutes enacted in pursuance of the organic authority the Legislature has clothed trustees of common school districts with the power to expend the public school funds in the erection of teachers' homes.

It is provided in article 2748, R. S. 1925, that the trustees of a common school district "shall be a body politic and corporate * * * and as such may contract and be contracted with, sue and be sued. * * * and may receive any gift, grant, donation or devise made for the use of the public schools of the district." In article 2749 it is provided that:

"Said trustees [of common school districts] shall have the management and control of the public schools and public school grounds; and they shall determine how many schools shall be maintained in their school district, and at what points they shall be located; * * * and they shall determine when the schools shall be opened and when closed. They shall have the power to employ and dismiss teachers. * * * They shall contract with teachers and manage and supervise the schools, subject to the rules and regulations of the county and state superintendents; they shall approve all claims against school funds of their district; provided, that the trustees, in making contracts with teachers, shall not create a deficiency debt against the district."

In article 2827, it is provided, in effect, that "state and county available" school "funds shall be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed" for those purposes; that local school funds derived from "district taxes" and all other local sources may be used for the above enumerated purposes, and "for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employees, for buying school sites, buying, building and repairing and renting school houses, and for other purposes necessary in the conduct of the public schools to be determined by the board of trustees, the accounts and vouchers for county districts to be approved by the county superintendent; provided, that when the state available school fund in any city or district is sufficient to maintain the schools thereof in any year for at least eight months, and leave a surplus, such surplus may be expended for the purposes mentioned herein."

[3] The effect of these statutory provisions is to authorize the trustees to expend the school funds derived from local sources, and the surplus from the state and county available school funds, for any and all the purposes enumerated, and for such other purposes as in the discretion of the board of trustees may be reasonably necessary in the maintenance and operation of the schools.

[4, 5] The record discloses that the local trustees, with the advice, consent, and co-operation of the county superintendent, contemplated expending, had in fact expended, $350 out of the local maintenance fund, and $360 out of the state available fund, in the purchase of timber for "the purpose of building a schoolhouse on land owned or controlled by said district; said schoolhouse to be used by the trustees of said district as living quarters for the teachers of said school, or for such other purpose as to the trustees of said district may seem proper or necessary in conducting said school"; that "the trustees of said district, before issuing said vouchers for the purpose of building said house, determined and decided that it was necessary to expend the amounts evidenced by said vouchers for the purpose of building said house, and that, such house was necessary in the conduct of the schools of said district"; that said amounts "were paid out of the funds remaining on hand after conducting the schools of said district for at least eight months during the school year 1926 and 1927, and before said school year had expired; that after said vouchers had been paid, there still remained to the credit of the funds of said district a considerable amount of money which would be carried over to the credit of the school year 1927 and 1928. These defendants further say that there will be more than sufficient money to the credit of the funds of said district to conduct said school for the year 1927 and 1928; that such funds will be derived from the state available fund and a local maintenance tax levied by said district for 1927; and that the schools of said district will be conducted for more than eight months during said school year, and ample funds will be to the credit of said district to pay all teachers and meet all expenses of said district."

Appellant, as a tax paying property owner

seeks to enjoin these expenditures, not upon the ground that the expenditures would constitute an abuse of discretion lodged by law in the trustees, but upon the ground that such action would be void and beyond any authority vested in the trustees under the Constitution and laws of the state; that such unlawful expenditures would result in increasing the taxes to be laid upon appellant as a property tax payer in the district.

We are of the opinion that under the powers granted common school district trustees by the statutes above referred to, those trustees have the authority, to be reasonably exercised within their discretion, to appropriate the surplus funds in their hands to the construction of a "schoolhouse," such as that proposed here, to be used by them in providing "living quarters for the teachers of said school, and for such other purposes as to the trustees of said district may seem proper or necessary in conducting said school."

It is not difficult to conceive of conditions existing in some school districts, especially those in remote communities, which would render such facilities desirable. Those facilities in some cases, depending upon the conditions in particular districts, would undoubtedly enable the trustees to procure better and more experienced teachers, under more advantageous contracts of employment would house the teachers in close proximity to the school rooms, affording constant oversight and protection of the school properties. It is perhaps a matter worthy of judicial notice that many progressive school communities in the state, and particularly in the southwestern portion of the state, have provided homes or dormitories for their faculties. The Legislature has recognized the desirability and necessity of this improvement in independent and common school districts by authorizing the issuance of bonds, when voted, for the purpose of buying sites and constructing "teachers' homes" in connection with the schools. Article 2797. Appellant contends that this provision for that purpose is restrictive in its effect, and excludes any other mode of procuring this improvement. We conclude, however, that this provision is merely cumulative, and not exclusive, and does not restrict the authority implied from the general laws hereinabove cited, whereby we hold that the trustees may employ surplus funds derived from state and county available funds, and district funds, in the acquisition or construction of teachers' homes. Given this authority, the matter becomes one of policy, of administration, to be determined by the trustees. And this conclusion brings us to the question of jurisdiction, which was raised in the court below and is presented here by appellees.

[6] The statutes provide that parties to controversies over the conduct of the public schools shall appeal from any action of the county superintendent to the county board of trustees, and that if either party desires to carry the appeal further he may elect, upon five days' notice of such election, to "appeal to any court having proper jurisdiction, or to the state superintendent of public instruction." Acts Reg. Sess. 40th Leg. 1927, p. 128. In prescribing this method of appeal, no exception is made in the character of controversies subject to the appeal. Upon its face the provision embraces all controversies arising in the conduct of our public schools.

But some of the courts have read exceptions into the statutes, as formerly embraced in article 2686, R. S. 1925, which was amended by the act of 1927, above referred to. Under these authorities the rule seems to have emerged that appeals from actions administrative in their nature must be taken up through higher school authorities, as provided by article 2686, as amended, but that in matters in which the authority of the trustees to act under constitutional or statutory provisions is attacked, the parties complaining may take their causes directly to the courts, by mandamus or injunction, and there secure an adjudication of the question of whether in the action complained of the trustees have acted, or propose to act, within the authority given them under the Constitution and laws of the state. Henderson v. Miller (Tex. Civ. App.) 286 S. W. 501; City of Dallas v. Mosely (Tex. Civ. App.) 286 S. W. 497; Warren v. Sanger Dist. (Tex. Civ. App.) 288 S. W. 159; Johnson v. Dallas (Tex. Civ. App.) 291 S. W. 972; Trustees v. Stiff (Tex. Civ. App.) 190 S. W. 216.

Under that rule, we hold that because the real question presented is whether the trustees and county superintendent have authority, under the Constitution and laws of the state, to expend the surplus school funds in their hands in the construction of a building for housing the school faculty and such other purposes as the trustees may deem best in the conduct of the local school, the courts have jurisdiction of that question, and the trial court properly entertained the petition for injunction.

And we further hold that because it is determined that the trustees were acting within their lawful authority in the matter complained of, the injunction, having been temporarily granted, was properly dissolved.

[7] But we do not determine the question of whether the trustees may proceed in the proposed expenditure of the school funds for the purpose contemplated by them. That is a matter of administration, to be finally determined, in event of appeal, by the higher school authorities, in the procedure prescribed in article 2686, as amended by the act of 1927.

The order dissolving the injunction is affirmed.