THE ATTORNEY GENERAL
OF TEXAS
April 28, 1966



WAGGONER CARR
ATTORNEY GENERAL

Honorable J. W. Edgar                    Opinion No. C-672
Commissioner of Education
Texas Education Agency          Re:  Reconsideration of
Austin, Texas                        Opinion No. C-604
                                     based upon additional
Dear Mr. Edgar:                      facts submitted.

You have requested a reconsideration of Opinion
No. C-604 (March, 1966) based upon additional facts sub-
mitted to this office.  In that opinion, the question was
whether the residence property owned by the schools but used
by the Superintendent of Schools "for his residence" was
exempt from taxation by the State of Texas, Milam County, City
of Cameron, and the Cameron Independent School District.  Under
the facts submitted, we correctly held that such property,
used by the Superintendent as a private dwelling for his re-
sidence and for which he paid rent, was not exempt from tax-
ation.  The burden to show clear exemption from specific facts
and to overcome the presumption that the property is subject
to taxation is on the taxpayer.  Longview vs. Markham-McRae
Memorial Hospital, 137 Tex. 178, 152 S.W.2d 1112 (1941).

Additional material facts have now been submitted for
further consideration as to the possibility of the tax-exempt
status of the property:

    " "It became necessary and the district was
       compelled to obtain and purchase satis-
       factory living quarters thereby to en-
       courage a capable person to move to and
       serve as school superintendent at Cameron.
       The residence was bought to be occupied
       by its superintendent, only that the school
       district might be better served.

      "Rent houses for better school personnel are
       impossible in Cameron; indeed, the district
       may be forced to purchase additional re-
       sidences, teacherages, to encourage and se-
       cure personnel necessary in the operation
       of its school system.

> "The superintendent's residence, located
> three blocks from the school campus, is
> an integral part of its school plant and
> operations. It is district-owned property
> being paid for with its public funds. It
> is rented only to district personnel, the
> superintendent, as such, who pays $75 monthly
> rent, the utilities, and keeps up the premises."

It is further caused to appear from the facts supplied us that the trustees of the independent school district determined and decided that it was necessary to expend funds on hand for the purpose of acquiring the property for living quarters for the superintendent and which was necessary for conducting the schools in the district and essential under the prevalent conditions in the district to obtain the services of a qualified superintendent. Assuming that the actions and findings of the trustees of the school district as above stated were duly taken and made in accordance with law, and in the absence of some showing of abuse of discretion, we hold that such property, being owned and used for public purposes, is exempt from taxation. We also assume that the property was purchased in conformity with all statutory provisions.

Section 2 of Article VIII of the Constitution of Texas states in part as follows: ". . . the legislature may, by general laws, exempt from taxation public property used for public purposes."

Article 7150, Vernon's Civil Statutes, exempts "Public school houses" and "All public colleges, public academies . . . and all such buildings used exclusively and owned by persons for school purposes. In addition, it exempts "All property, whether real or personal, belonging exclusively to this State, or any political subdivisions thereof . . . ."

Our courts have held that all public property is to be regarded as "used for public purposes" within Article VIII, Section 2 of the Constitution of Texas when it is owned and held for public purposes, although it is not owned or held exclusively for such purposes and there has been no abandonment of such purposes. City of Abilene vs. State, 113 S.W.2d 631 (Tex. Civ. App. 1937).

An independent school district is held to be a political subdivision of the state, being a governmental and state agency and of the same general character as municipal corporations. 51 Tex.Jur.2d 323, 345, Schools, Sec. 6, and Sec. 14. Its

trustees have all of the powers expressly conferred as well as those necessarily implied therefrom. 51 Tex.Jur.2d 444, Schools, Sec. 85. It is also generally held that school boards or districts, under their general powers of school management, may contract for the board and lodging of its teachers. 78 C.J.S. 1172, Schools and School Districts, Sec. 230.

Independent school districts in Texas possess substantially the same powers as common school districts. Article 2797, Vernon's Civil Statutes, provides that both Common School Districts and Independent School Districts may issue bonds "in the same manner as provided by law for the issuance of other bonds to build and equip school houses and to purchase sites therefor, for the purpose of purchasing or building a teacher's home and for purchasing land in connection therewith . . . ."

It has been held that the above statute does not preclude the school trustees from using local funds, provided statutory conditions exist. Adams vs. Miles, 41 S.W.2d 21 (Comm. App. 1931).

In Landrum vs. Centennial Rural High School Dist., 146 S.W.2d 799 (Tex. Civ. App. 1941, error dism., judgm. cor.), it was held that a teacherage as provided for in Art. 2797, supra, comes within the meaning of a schoolhouse or school building.

Since the property in question is owned by the District, the crucial question is whether it is being used for a public purpose. Under the holding of Adams vs. Miles, 300 S.W. 211, affirmed by Commission of Appeals, 41 S.W.2d 21 (1931), a school teacherage for living quarters, where necessary to the proper maintenance of the local schools, would be a governmental function and public use; and it is within the statutory power of the school district trustees to expend public funds in the acquisition or construction of teacher's homes. The Court said in part:

> "It is not difficult to conceive of conditions existing in some school districts, especially those in remote communities, which would render such facilities desirable. Those facilities in some cases, depending upon the conditions in particular districts, would undoubtedly enable the trustees to produce better and more experienced teachers, under more advantageous contracts of employment would house the teachers in close proximity to the school rooms, affording

constant oversight and protection of the
school properties. It is perhaps a matter
worthy of judicial notice that many pro-
gressive school communities in the State,
and particularly in the southwestern portion
of the State, have provided homes or dormitories
for their faculties. The Legislature has re-
cognized the desirability and necessity of
this improvement in independent and common school
districts by authorizing the issuance of bonds,
when voted, for the purpose of buying sites and
constructing "teacher's homes" in connection
with schools. Article 2797 . . . ." (300 S.W. 214)

The above authority is in accord with the general rule
that such are proper public uses. 79 C.J.S. 10, Schools and
School Districts, Sec. 324; Taylor vs. Board of Public
Instruction of Lafayette County, 157 Fla. 422, 26 So.2d 52,
(1946). See also Craig vs. Bell, 211 S.C. 473, 46 S.E.2d 52,
58 (1948), wherein the construction and use of a residence
by the school district for the superintendent was upheld as
a proper school purpose and the Court took notice of the
trend in decisions in taking a "liberal view of the implied
powers of municipalities or school districts".

"Public use" is held to be that which will "promote
public education" and, as stated in 84 C.J.S. 483-484, Tax-
ation, Sec. 254, "The fact that income is derived from the
use of the property does not prevent the use from being a
public use or for public purposes . . . ."

It is also generally held in this connection that
married student's dormitories are a proper and appropriate
educational or public use. It is held that " . . . they are
considered to be a necessary responsibility of educational
institutions in light of the number of married students,
particularly at the graduate and professional level."
Schueller vs. Board of Adjustment of City of Dubuque (Iowa),
95 N.W.2d 731, 733 (1959).

S U M M A R Y

Under the submitted facts the real property
purchased and held by the Cameron Independent
School District for the superintendent's re-
sidence, where found to be essential to obtain
the services of a qualified superintendent and

necessary for conducting a school in the district, is exempt from taxation as being public property used for a "public purpose" under Section 2 of Article VIII of the Constitution of Texas and Article 7150, Vernon's Civil Statutes.

Yours very truly,

WAGGONER CARR
Attorney General

By Kerns B. Taylor
Kerns B. Taylor
Assistant

KBT:lsj

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Arthur Sandlin
Robert Flowers
Milton Richardson
John Banks

APPROVED FOR THE ATTORNEY GENERAL
By:  T. B. Wright