

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 9, 1998

The Honorable Joe Rubio
District Attorney
49th Judicial District
P.O. Box 1343
Laredo, Texas 78042-1343

Opinion No. DM-485

Re: Whether the colonias statute, Local Gov't Code ch. 232 subch. B, applies to employee housing provided by the Webb Consolidated Independent School District (RQ-902)

Dear Mr. Rubio:

On behalf of the Webb Consolidated Independent School District (the "school district"), you ask about the application of the colonias legislation,[1] codified as Local Government Code chapter 232, subchapter B ("subchapter B"), to employee housing provided by the school district. Specifically, you ask whether subchapter B applies to the school district's lease of manufactured homes on school grounds to teachers. We conclude that the leases you describe are subject to subchapter B.

Your letter sets forth the following facts: The school district operates schools in Bruni and Oilton, communities with housing shortages. Teachers are generally hired from outside the communities. In order to attract teachers, the school district has "traditionally provided housing for some of its teachers in manufactured homes situated on school district property." Teachers sign residential lease agreements with the school district and pay a nominal rental fee to the school district. The school district states that it "does not . . . profit from such rental payments and deems these quarters akin to a fringe benefit for teachers." The school district is now making plans to place additional manufactured homes on its property.[2]

---

[1]*See* Act of May 28, 1995, 74th Leg., R.S., ch. 979, 1995 Tex. Gen. Laws 4895, 4895.

[2]We assume, but do not decide, that an independent school district has the authority to provide employee housing on school grounds pursuant to a lease arrangement incident to its general authority to control and manage school property and to employ and compensate teachers. *See generally* Educ. Code ch. 11, subch. D (powers and duties of board of trustees of independent school district); *id.* § 13.155 (consolidated school district is an independent school district); *see also Landrum v. Centennial Rural High Sch. Dist.,* 146 S.W.2d 799, 802 (Tex. Civ. App.--Austin 1940, writ dism'd) (concluding that "teacherage" is school building) (citing *Adams v. Miles,* 300 S.W. 211 (Tex. Civ. App.--San Antonio, 1927, writ granted)).

Subchapter B requires subdividers to comply with certain special conditions before subdividing land, such as preparing a plat, with an attached description of water and sewer facilities, *see generally* Local Gov't Code § 232.023, and obtaining county approval of the plat, *see id.* §§ 232.024, .028. Section 232.029 prohibits a utility providing water or sewer services, electricity or gas from serving or connecting any subdivided land unless certain conditions are met. Apparently, the school district has had difficulty obtaining utility services for its manufactured homes because there is some concern that the school district is a "subdivider" subject to subchapter B.

Local Government Code section 232.022 provides that subchapter B "applies only to land that is subdivided into four or more lots that are intended primarily for residential use in the jurisdiction of an affected county." *Id.* § 232.022(a). For purposes of this opinion, we can break this provision regarding the scope of subchapter B into two general requirements: For land to be subject to subchapter B, it (1) must be located "in the jurisdiction of an affected county" and (2) must be "subdivided into four or more lots that are intended primarily for residential use."

With respect to the threshold, first requirement -- that the land be located "in the jurisdiction of an affected county" -- you inform us that Webb County is an "affected county" subject to subchapter B. *See id.* § 232.021(1) (defining the term "affected county"). You have not provided us with complete information regarding whether the land at issue is within the jurisdiction of the county, however. For the purposes of subchapter B, land is considered to be within the jurisdiction of a county "if the land is located in the county, outside the corporate limits of municipalities, and outside the extraterritorial jurisdiction of municipalities, as determined by" Local Government Code chapter 42. *Id.* § 232.022(b). You suggest that the school district's manufactured homes are located on property outside the corporate limits of any municipality. We will assume that the manufactured homes are located on property outside the extraterritorial jurisdiction of municipalities.

With respect to the second requirement -- that the land must be "subdivided into four or more lots that are intended primarily for residential use"-- we assume that the school district contemplates entering into four or more leases. The most crucial question for our purposes is whether the school district is subdividing. Again, under section 232.022(a), applicability of subchapter B to the school district's conduct depends upon whether the land at issue "is *subdivided* into four or more lots." *Id.* § 232.022(a) (emphasis added). In addition, subchapter B's platting requirements apply to "[a] subdivider of land." *Id.* § 232.023(a).

The subchapter defines the terms "lot," "subdivide," "subdivider," and "subdivision" as follows:

(7) "Lot" means a parcel into which land that is intended for residential use is divided.

. . . .

(12) "Subdivide" means to divide the surface area of land into lots intended primarily for residential use.

(13) "Subdivider" means an individual, firm, corporation, or other legal entity that owns any interest in land and that directly or indirectly subdivides land into lots as part of a common promotional plan in the ordinary course of business.

(14) "Subdivision" means an area of land that has been subdivided into lots for sale or lease.

*Id.* § 232.021. We conclude that the school district's lease of manufactured homes to teachers falls within the definition of "subdivide" and that the school district is a "subdivider," for the following reasons.

"Subdivide" means "to divide the surface area of land into lots intended primarily for residential use." *Id.* § 232.021(12). Your letter contends that the school district has not divided the surface area of land. The residential lease used by the school district, however, appears to convey to a teacher the right to occupy a manufactured home on a distinct tract of land. *See* Letter from Joe Rubio, District Attorney, 49th Judicial District, to Opinion Committee, Office of Texas Attorney General (Jun. 18, 1996), Exhibit A, entitled "RESIDENTIAL LEASE, paras. 2 (referring to property by lot, block, and subdivision), 5 (requiring tenant to limit number of vehicles parked on property), 15 (requiring tenant to maintain "the yard including the shrubbery"). Based on the terms of this lease, we believe that the school district is dividing the surface area of land. In addition, it is clear from your letter that the parcels of land are leased to the teachers as residences and are thus "intended for residential use" and constitute "lots" within the meaning of subchapter B. *See* Local Gov't Code § 232.021(7).

In addition, the school district falls within the definition of "subdivider." Again, the term "subdivider" is defined as "an individual, firm, corporation, or other legal entity that owns any interest in land and that directly or indirectly subdivides land into lots as part of a common promotional plan in the ordinary course of business." *Id.* § 232.021(13). The school district is a legal entity[3] that owns an interest in land.[4] As discussed above, it is subdividing land into lots.

---

[3]A "legal entity" is an "entity, other than a natural person, who has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents. . . ." BLACK'S LAW DICTIONARY 804 (5th ed. 1979). The trustees of a consolidated independent school district constitute a body corporate and in the name of the district may acquire and hold real and personal property and sue and be sued. *See* Educ. Code §§ 11.151(a) (powers and duties of board of trustees of independent school district), 13.155 (consolidated school district is an independent school district).

[4]"All rights and titles to the school property, whether real or personal, shall be vested in the trustees and their successors in office." *Id.* § 11.151(c). Your letter indicates that the manufactured homes are located on property owned by the school district.

We also believe that the school district is subdividing land into "lots as part of a common promotional plan in the ordinary course of business." *Id.* The statute defines a "common promotional plan" as "any plan or scheme of operation undertaken by a . . . subdivider . . . to offer for sale or lease lots when the land is . . . contiguous or part of the same area of land." *Id.* § 232.021(3). You state that "the school district has rented out the manufactured homes as part of a scheme to provide residential quarters for its employees." The manufactured homes are "situated on school district property." Thus, the school district appears to have a "plan or scheme" to lease lots that are "part of the same area of land." The phrase "in the ordinary course of business" is not defined by the statute. The phrase may merely further refine the term "common promotional plan." Alternatively, the language "in the ordinary course of business" may have been intended to except certain gratuitous transfers from the scope of subchapter B. *See id.* § 232.022(a) ("This subchapter does not apply if the subdivision is incident to the conveyance of land as a gift between persons related to each other . . . ."). The leases at issue are part of teachers' compensation from the school district and are not gratuitous.[5] Furthermore, your letter states that the school district "has traditionally provided housing for some of its teachers in manufactured homes situated on school district property." Given that the school district provides housing to its employees as a fringe benefit for rent pursuant to a form residential lease agreement, we believe that the school district's leases are "part of a common promotional plan within the ordinary course of business," however one defines the latter phrase.

## S U M M A R Y

Local Government Code chapter 232, subchapter B, applies to the Webb Consolidated Independent School District's lease of manufactured homes on school grounds to teachers.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General

---

[5]Your letter states that teachers living in the homes pay a nominal rental fee and also describes the housing as a fringe benefit.