**Robert GREENE et al., Plaintiffs,**

v.

**Dr. Jeff R. MOORE et al., Defendants.**

**Civ. A. No. CA–2–74–39.**

United States District Court,
N. D. Texas,
Amarillo Division.

April 12, 1974.

R. A. Wilson, Underwood, Wilson, Sutton, Berry, Stein & Johnson, ·Amarillo, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

Plaintiff, Robert Greene, was a senior in Caprock High School, Amarillo, Texas until his suspension in March of 1974. The other plaintiffs are his mother and father. The defendants are the members of the Board of Trustees of The Amarillo Independent School District, the Superintendent of Schools, the principal of the high school and the band director at the high school.

This court has jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

The complaint was filed with the Clerk of this court on April 4, 1974 and a hearing was held before the court in Amarillo, Texas on April 11, 1974 with the parties and their attorneys announcing ready. The court announced that it would hear and determine all matters in controversy including the propriety of affording the equitable relief prayed for, including a prayer that a permanent injunction be issued by this court preventing the enforcement of the suspension of the plaintiff from attendance at Caprock High School. The matter was heard without a jury and after the parties had presented their evidence and argument, and after the court had fully considered same, including a consideration of the pleadings, this memorandum opinion is filed which shall constitute the court's Findings of Fact and Conclusions of Law.

Robert Greene had been a student in Caprock High School for 1½ years and it is unquestioned that he was a good student scholastically with A and B grades, and that generally he got along well with his fellow students and members of the faculty. However, the record indicates that in the past he had some difficulties, none of which were serious, with Mr. Restine, the band director.

Robin M. Green, Frank J. Baughman, Ochsner & Baughman, Amarillo, Tex., for plaintiffs.

On Thursday, March 14th, at about 3:15 P.M., and during band practice, Robert was reprimanded, along with other students, because of unruly conduct. Robert's reply to one of Mr. Restine's assistants and other remarks at the time caused Mr. Mixon, the principal, to be summoned to the band hall.

As a result of a short conference, Robert was asked to report the next morning so that his schedule would be changed, which would in effect mean that he would be dropped from the band. It appeared to Mr. Mixon that Robert might desire to speak to Mr. Restine in private, and accordingly the others left and only the two remained in Mr. Restine's small office. Without any apparent provocation, and certainly without any physical violence on Mr. Restine's part at this time, Robert threw a cup of coffee on Mr. Restine's shirt and then "chunked" the coffee cup toward him, which resulted in minor injuries to Mr. Restine and broke his glasses. Robert immediately left the office without explanation to anyone and went home. Robert admits the incident in the office.

At about 4:15 on this Thursday, Mr. Mixon called Robert's mother by telephone. By this time she had been made aware of the incident by her son. Mr. Mixon then notified her that Robert was suspended until further notice.

At about 8:00 A.M. the following day (Friday) Mr. Mixon called to set up a hearing and explained to Mrs. Greene that it was in accordance with new procedures that had been established by the Board of Trustees. Mrs. Greene explained that she had an appointment at 9:30 that day with the Assistant Superintendent, Mr. Lively, an appointment she had arranged the previous afternoon.

While in Mr. Lively's office a telephone call was made to him by him to Mr. Mixon and a meeting or hearing was arranged in Mr. Mixon's office for Mrs. Greene and son for 2:30 that afternoon.

In the meantime Mrs. Greene learned that the band director had filed a criminal complaint against her son and she employed counsel to represent him. The 2:30 P.M. appointment in Mr. Mixon's office was cancelled by Mrs. Greene because of the criminal matter that needed attention. However, Mr. Baughman, the attorney for Robert, did arrange for an appearance in Mr. Mixon's office the following Monday (March 18th) at 3:00 P.M.

Up until the time of the Monday hearing in Mr. Mixon's office no written charges or notices had been given Mrs. Greene. She did, however, know prior to the meeting what the allegations were, i. e., the coffee cup incident, and had been told of Robert's suspension. The court further finds and concludes that she knew of the incident in detail and that this was the basis of the charges against Robert, and that the period or time of his suspension was to be determined.

On Monday, March 18, 1974, shortly after 3:00 P.M., Mrs. Greene, Robert, his attorney Mr. Baughman, Mr. Restine, Mr. Gibson and Mr. Chafin (who were Restine's assistants) and the assistant principal went into the office and Mr. Mixon was present. In a preliminary statement Mr. Mixon explained the new procedures and briefly mentioned the incident in question. Mr. Baughman explained that he could not permit Robert to testify because of the pending criminal charges, and no further evidence was presented. Mr. Mixon then announced that Robert would be suspended for the remainder of the term which ends May 31, 1974.

By letter dated March 18, 1974 and in accordance with a written school policy (Plaintiffs' exhibit 5) Mr. Mixon wrote Mr. and Mrs. Greene, outlining the details of the incident, notifying them of their right to appeal to the Board, and formally advising them of Robert's suspension.

Mr. Baughman, after visiting with the school board attorney, gave written no-

tice of appeal to the Board by written instrument dated March 21, 1974. (Plaintiffs exhibit 3). The hearing on the appeal was placed on the agenda for Monday night March 25th, about 11 days after the incident which resulted in Robert's suspension.

The notice of appeal requested that four of Robert's teachers be requested to appear at the Board meeting and Mr. Baughman also personally requested the individual teachers to appear. Superintendent Ashworth decline to issue such a request to the teachers as he felt it would be construed as compulsion by the Board. However, it was made clear to Mr. Baughman that if he desired, these teachers would be heard but that it was his responsibility to get them to the hearing.

The hearing before the Board was held as scheduled. Mrs. Greene, Robert and their attorney were present. Although Robert did not testify, his lawyer did call witnesses and extensive testimony was heard by the Board. No restriction was placed on the right of the Greenes to call witnesses, to examine and cross-examine, to make statements nor as to the amount of time they were allowed. Members of the Board actively participated in questioning, and a complete transcript of the hearing is before the court as Defendants' exhibit 1.

At the termination of the testimony before the Board, a motion was made and seconded that the period of suspension be reduced to two weeks. This motion failed to carry by a majority vote and a later motion was passed suspending Robert for the remainder of the school term.

It should be noted that Robert, a senior, had sufficient credits at mid-term to graduate and his suspension will not affect his right to a high school diploma.

The four teachers—who did not appear before the Board—were not witnesses to the incident in question. They would have been used to testify to the Board that Robert was a good student and that he got along well with others in his classes. This matter was apparently not disputed before the Board nor was it an issue before this court.

Plaintiff contends he was denied due process in violation of his Fourteenth Amendment rights, not only in the alleged failure to afford him proper hearings, but in suspending him without evidence, or without sufficient evidence that his conduct could be punished by the maximum suspension allowed under the Texas law. (Art. 21.301, Texas Education Code, V.T.C.A.).

The United States Court of Appeals for the Fifth Circuit "has expressed and reiterated its view that school disciplinary matters are best resolved in the local community and within the institutional framework of the school system." Lee v. Macon County Board of Education, 490 F.2d 458 (1974). It appears to this court that the disciplinary matter now before the court has been properly handled by the local authorities.

The Amarillo School Board used its independent consideration of what, under the circumstances, the penalty should be and as required by Lee v. Macon County Board of Education, *supra.* They actively participated in the hearing and actively considered and voted on a motion for a lesser penalty. It cannot be said that they acted as a "rubber stamp" or merely confirmed the principal's judgment.

The notices given and the conferences and hearings held also fulfilled the requirements of due process.

■ Mr. Mixon had the right to impose a suspension, under these facts, until such time as the formal hearing procedure could be invoked, which he did by telephone to Mrs. Greene on Thursday, March 18th.

■ "We cannot forget that a public school principal retains considerable freedom to administer his realm . . . ." Murray v. West Baton Rouge Parish School Board, 472 F.2d 438 (5th Cir. 1973). Further no hearing is required for "minor" punishment such as three days' suspension. Dunn v.

Tyler Independent School District, 460 F.2d 137 (5th Cir. 1972).

The hearings were then held in accordance with School Board policy, before Mr. Mixon the principal on March 18th and before the full Board on Monday, March 25th.

■ Although, standing by itself, certain technical deficiencies in the hearing before Mr. Mixon might be pointed to, the court feels that under these circumstances this hearing satisfied Fourteenth Amendment requirements. The student, his mother and an attorney were present. Mrs. Greene knew full well the purpose of the hearing and knew in detail of the charges against her son as did Robert. It cannot be expected or required that a high school principal conduct such a hearing with the formalities or exactness of a judicial proceeding.

■ Further, should there be any lack of due process in the hearing before the principal it was fully cured by the hearing held one week later before the entire Board. "It is, however, well settled that a procedural defect in an initial hearing before school officials can be cured by subsequent hearings." Sullivan et al. v. Houston Independent School District et al., 475 F.2d 1071 (5th Cir. 1973).

■ Art. 23.26, Texas Education Code, is the general rule making powers given a school board. Art. 21.301, Texas Education Code, expressly grants to school boards the right to suspend a student for incorrigible conduct for the remainder of the term. Defendants' exhibit 1 and Robert Greene's admission to this court prove that the incident in question happened. There is more than sufficient evidence in this record to prove that the conduct by Robert Greene on this occasion was incorrigible, and the Board was fully supported by the evidence in reaching its decision. Such evidence being before the Board, there is no denial of due process in this respect.

 It was not the duty of the Board or the School Administration to produce as witnesses the other teachers. Their presence in this case would not have been able to overcome the facts of the incident as they were not present. Their testimony as to his grades and behavior, although bearing indirectly on the matter in question, would be more likely to prove that Robert himself was not an incorrigible. This the Board did not nor was it necessary to determine. It is not the incorrigibility of the student that would authorize suspension, but whether the act itself was incorrigible.

Accordingly, a judgment will be entered denying plaintiffs relief.