**ECTOR COUNTY INDEPENDENT SCHOOL DISTRICT and the Ector County Independent School District Board of Trustees, Appellants,**

v.

**William HOPKINS, as next friend of Karen Hopkins, Appellee.**

**No. 6410.**

Court of Civil Appeals of Texas, El Paso.

Dec. 18, 1974.

Rehearing Denied Jan. 15, 1975.

Deaderick, McMahon, Cox, Todd & Tidwell, Robert B. Cox, Jack Q. Tidwell, Odessa, for appellants.

Wesch, Ater & Hirsch, Gene Ater, H. Thomas Hirsch, Odessa, for appellee.

## OPINION

OSBORN, Justice.

This case results from the disciplinary action taken by the administrative authorities of Permian High School in Odessa in ordering a one-day suspension from school of Karen Hopkins, a senior student who acknowledged drinking wine during her lunch hour in violation of school rules. The one-day suspension from school resulted in her expulsion from membership in the Permian High School Chapter of the National Honor Society and from the Permian Pepettes, a local student group organized to foster school spirit. The trial Court entered a permanent injunction, just prior to her graduation, ordering Karen reinstated into membership into the two organizations from which she was expelled, but leaving in effect the one-day suspension from school. Believing that the trial Court reached a just result but at the wrong time, we reluctantly reverse the case for the reasons set forth herein.

At the hearing on the permanent injunction, Miss Hopkins testified that she had a grade average of "A" and was probably in the top 50 students scholastically in a class of 700. She said on Monday, February 4, 1974, she was called to the Assistant Principal's office and questioned with regard to her conduct the preceding Friday. She readily acknowledged that on that occasion she and two other girls had gone home for lunch and did drink some wine. She did not miss any school and apparently caused no problem on her return to school in the afternoon. She knew that drinking was in violation of school rules. After admitting such conduct on Monday, she was told that she would be suspended from school on Tuesday for one day. When she returned on Wednesday, she was handed a letter from the National Honor Society's sponsor, a teacher at the school, advising her that she had been removed from membership in the Society for conduct unbecoming a member. She said she did not know the Faculty Board of the Permian Chapter of the National Honor Society was considering removing her as a member prior to receiving such letter, and she never received any prior notice and had no hearing before her expulsion from membership in the Society.

She testified that she was also forced to resign from membership in the Permian Pepettes by the organization's sponsors. Again, she had no notice or opportunity to be heard concerning her continued membership in that organization. She acknowledged that the Pepette rules prohibited

drinking while in uniform, which she violated. The National Honor Society rules also required high standards of conduct, the violation of which would result in a forfeiture of membership.

The faculty sponsor of the National Honor Society testified at the injunction hearing and said there was no meeting of the Faculty Board, but she contacted each member individually before writing the letter to Karen. She said there was no notice given or hearing held before Karen was expelled. This same faculty sponsor said that on another occasion in March, 1974, a couple of boys who were members of the National Honor Society drank beer on a school sponsored trip and, after being suspended from membership in the Society, they were given a hearing by the full Faculty Board and ultimately reinstated and only received an official warning and reprimand. Apparently, the change in severity of the punishment to the boys resulted from the fact that a teacher gave permission for the boys to buy the beer. Although the record is not completely clear on this issue, it would appear that this teacher apparently requested the full hearing and did appear before the Faculty Board in behalf of the boys who had been suspended to request a less severe punishment. It was because of this involvement with the teacher that the Board decided to warn the participants rather than suspend them from membership.

This difference in treatment caused Karen's parents to conclude that their daughter had not been treated fairly and they appealed her suspension to the Board of Trustees of the Ector County Independent School District. A hearing of her grievance was heard by the Board at which time she and her father and their attorney were present. The Board of Trustees did not act favorably upon her appeal and suit was filed in the District Court seeking injunctive relief.

By their first point of error, Appellants contend the trial Court erred in not sustaining their Plea in Abatement because Appellee did not exhaust the prerequisite administrative appeals to the Commissioner of Education and the State Board of Education prior to filing suit in District Court. The parties stipulated at the injunction hearing that no administrative appeal was made from the decision of the Board of Trustees of the School District. The trial Court initially sustained the Plea in Abatement, but two days later, on its own motion, vacated and set aside the order sustaining the Plea in Abatement and set the case down for hearing. Following the hearing, the Court granted in part the relief sought by the Appellee.

Section 11.13 of the Texas Education Code, V.T.C.A., provides that any person aggrieved by the school laws of Texas or by actions or decisions of any Board of Trustees or Board of Education may appeal in writing to the Commissioner of Education, and that his decision shall be subject to review by the State Board of Education. This appeal provision also states that " * * * nothing contained in this section shall deprive any party of any legal remedy."

The cases discussing the provision of the Statute, from which the foregoing section of the Education Code was patterned, make it clear that a party must exhaust all administrative appeals before resort may be had to the courts for relief in cases involving questions of fact. McIntyre v. Hoblinski, 333 S.W.2d 697 (Tex. Civ.App.—Waco 1960, writ ref'd). But where the facts are not in dispute, and there was "left for decision only a pure question of law * * * , immediate resort to the courts was proper in such a situation." Mission Independent School Dist. v. Diserens, 144 Tex. 107, 188 S.W.2d 568 (1945). And in a proper case injunctive relief may be granted without exhausting all administrative appeals to the State authorities. Warren v. Sanger Independent School Dist., 116 Tex. 183, 288 S.W. 159 (1926); Alvin Independent School District

v. Cooper, 404 S.W.2d 76 (Tex.Civ.App.—Houston (1st Dist.) 1966, no writ). These basic conclusions were reaffirmed in Cook v. Neill, 163 Tex. 49, 352 S.W.2d 258 (1961).

In the case now before this Court, the Appellants urge that the trial Court did not have jurisdiction to hear this case until the administrative remedies had been exhausted because the only issue remaining for decision was whether or not Karen should have been suspended from school and expelled from the two organizations because of her conduct in violation of recognized rules of conduct and that such a determination involves questions of fact. On the other hand, the Appellee does not contend that there is some issue to be decided as to whether Karen breached school rules, or whether she had prior knowledge of the rules, or whether the disciplinary acts were unjust under the circumstances, but instead claims that she was denied a hearing before the suspension and expulsions and that there is no fact issue in dispute with regard to this particular issue which constituted a denial of due process of law.

■■■ In this case, both the suspension from school and the expulsion from membership in the two school organizations were carried out by school teachers and administrative personnel, all employed by school authorities and paid with School District funds. Action of school authorities in their official capacities is clearly State action within the meaning of the Fourteenth Amendment. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L. Ed.2d 731 (1969); Mangold v. Albert Gallatin Area School District, Fayette County, Pennsylvania, 438 F.2d 1194 (3d Cir. 1971). In Esteban v. Central Mission State College, 277 F.Supp. 649 (W.D.Mo. 1967), the Court noted that the Fourteenth Amendment with its due process clause applies to State educational institutions.

One of the leading cases on the issue of due process as applied to students in a tax supported educational institution is Dixon v. Alabama State Board of Education. 294 F.2d 150 (5th Cir. 1961). In that case, the Court said:

"Whenever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law. The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved. * * *"

With regard to actual expulsion from school, the Court said:

" * * * Admittedly, there must be some reasonable and constitutional ground for expulsion or the courts would have a duty to require reinstatement. The possibility of arbitrary action is not excluded by the existence of reasonable regulations. There may be arbitrary application of the rule to the facts of a particular case. Indeed, that result is well nigh inevitable when the Board hears only one side of the issue. In the disciplining of college students there are no considerations of immediate danger to the public, or of peril to the national security, which should prevent the Board from exercising at least the fundamental principles of fairness by giving the accused students notice of the charges and an opportunity to be heard in their own defense. Indeed, the example set by the Board in failing so to do, if not corrected by the courts, can well break the spirits of the expelled students and of others familiar with the injustice, and do inestimable harm to their education."

The Court went on in that opinion to outline the necessary procedural steps required to be taken before a student could be expelled from school under the due process requirements of the Constitution, including the right to notice, and a hearing to present his defense against the charges. For a review of this and other recent cases, see: "Suspension of Student Pending

Disciplinary Hearing," 2 Tex.Tech L.Rev. 271 (1971).

The requirements for due process are well summarized in Whitfield v. Simpson, 312 F.Supp. 889 (E.D.Ill.1970), where the Court said:

> "The test of whether or not one has been afforded procedural due process is one of fundamental fairness in the light of the total circumstances. No particular method of procedure is required for due process, but what is required is: (1) Adequate notice of the charges; (2) Reasonable opportunity to prepare for and meet them; (3) An orderly hearing adopted to the nature of the case; and (4) A fair and impartial decision. Buttny v. Smiley, 281 F.Supp. 280 (D.C.D.Colo., 1968)."

In addition, the nature and extent of both the violation or offensive conduct, and the nature and extent of the punishment, must be considered in determining what due process safeguards are required. In Farrell v. Joel, 437 F.2d 160 (2d Cir. 1971), the Court said:

> "* * * we will assume arguendo that due process applies when a publicly financed educational institution—whether college or high school—imposes a mild, as well as a severe, penalty upon a student.

> "However, the inquiry does not end with this assumption; it only begins. Due process does not invariably require the procedural safeguards accorded in a criminal proceeding. Rather, '(t)he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' Cafeteria and Restaurant Workers, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). See Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L. Ed.2d 1307 (1960) (' "Due process" is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts.') We believe that in these school discipline cases the nature of the sanction affects the validity of the procedure used in imposing it. See Wright, supra, 22 Vand. L.Rev. at 1070–71; A Statement of the Rights and Responsibilities of College and University Students, 1 Human Rights 140, 153 (1970). Expulsion would be at one extreme. Near the end of the other might be a penalty of staying after school for one hour for 'unexcused tardiness to class or study hall'; in such an instance, written notice and cross-examination of adverse witnesses would require inappropriate time and effort. Of course, as one approaches the center of the two extremes of major and minor discipline the line becomes shadowy, but the difficulty of drawing it does not eliminate the distinction between the two. Moreover, the general age level of the student group involved might affect determination of the constitutional issue. A 'demonstration' in kindergarten, after all, is not the same as one in college."

With regard to what process is due, where students admit the misconduct with which they are charged, the function of procedural protections in insuring a fair and reliable determination of the issue of "guilt" is not essential. "However, due process may also contemplate affording the plaintiff an opportunity to be heard on the question of what discipline is warranted by the identified offense." Betts v. Board of Education of City of Chicago, 466 F.2d 629 (7th Cir. 1972).

Had Karen's appeal been made directly from the authorities who suspended her from school for one day and expelled her from membership in the two organizations, without first appealing to the Board of Trustees, we would be inclined to affirm the action of the trial Court because as a matter of law she had no notice and no hearing before being expelled from the National Honor Society and the Permian Pepettes and no opportunity to be heard on

the question of what discipline was warranted by the admitted offense. Warren v. National Association of Secondary School Principals, 375 F.Supp. 1043 (N.D.Tex. 1974).

We conclude that the one-day suspension required no more than the oral notice from the Assistant Principal concerning the alleged improper conduct upon the part of the student, and his determination at an informal hearing that she had in fact violated the school rules. We perceive the permanent expulsion from the two school organizations, in which membership apparently resulted from several years of diligent efforts upon the part of Karen, both in and out of the classroom, to be of a more serious nature in which due process was initially denied. While permanent expulsion for one violation of the organizational rules might be a greater penalty than either the trial Court or this Court would impose, we recognize quite clearly that the ultimate decision must necessarily rest with the school authorities and the faculty sponsors charged with enforcing the rules and teaching disciplinary lessons to the students in the organizations. But those faculty members are also charged with teaching elementary rules of fair play and seeing that constitutional rights are always protected regardless of the offense committed. In this case, the rights were not protected and the lesson was not taught. There was no hearing before the expulsion from membership in the National Honor Society or the Permian Pepettes which afforded an opportunity to be heard on the question of what discipline was warranted by the admitted offense, and no opportunity to present a mitigative argument.

But, as noted earlier in this opinion, an appeal from the initial decisions was taken to the Board of Trustees of the School District and no complaint is made concerning the type of hearing which Karen and her parents received at that time. The record reflects that a hearing was held by the Board of Trustees, that Karen, her father, and their attorney were all present, admittedly they knew the misconduct with which Karen had been charged, the rules which she had violated and no contention is made that due process was not afforded at that time. In Sullivan v. Houston Independent School District, 475 F.2d 1071 (5th Cir. 1973), the Court had before it the issue of due process in a case where a student had been suspended from school for selling an "underground" newspaper near a high school campus. The Court concluded that the student had not received due process at the initial hearing where he was suspended by Mr. Cotton, the school principal, who was his principal accuser with regard to the misconduct which resulted in his suspension. This suspension was upheld in subsequent hearings by the assistant superintendent and the deputy superintendent. In considering the due process question, the Court said:

> "It is, however, well settled that a procedural defect in an initial hearing before school officials can be cured by subsequent hearings. *Murray, supra*; Speake v. Grantham, 5th Cir. 1971, 440 F.2d 1351, aff'g S.D.Miss.1970, 317 F. Supp. 1253. In the instant case, Paul was afforded two extensive *de novo* appellate hearings at which he was represented by counsel and presented and cross-examined witnesses. In our view, the procedural fidelity that characterized these appellate hearings cured the procedural defect in the hearing before Mr. Cotton."

The decision in the Sullivan case was followed in Greene v. Moore, 373 F.Supp. 1194 (N.D.Tex.1974), where a student suspended from school by the principal subsequently had a hearing before the Board of Trustees at which time he was afforded a due process hearing.

We conclude that the Appellee, having taken the benefit of the administrative appeal to the Board of Trustees and having made no complaint of denial of due process at that stage of the proceedings, may not now complain of earlier procedural defects

which were cured by the subsequent hearing. Thus, the appeal resolves itself to the factual issue of whether or not under all the circumstances the punishment inflicted upon Karen was excessive under the circumstances, and must necessarily involve all of the factual issues which resulted in her misconduct, all of the factual issues which weigh in mitigation of a warning or reprimand rather than permanent expulsion from membership and the treatment which had been afforded others in similar circumstances. All of these are matters to be considered in an administrative appeal and are not limited to pure questions of law which may be resolved by the trial Court prior to the time a party has exhausted all administrative appeals.

The conclusion that there are factual issues to be resolved is made abundantly clear from the Appellee's counterpoint which attacks the trial Court's failure to rescind the one-day suspension from high school. The school's Assistant Principal who effected the one-day suspension testified that in his opinion Karen's conduct was "disruptive to the successful management, good order or discipline of such secondary school." We find no evidence in the record which would support such a determination but again this is a factual matter for determination upon exhaustion of the administrative appeals procedures.

The Appellants' first point of error is sustained. The judgment of the trial Court is reversed and the cause remanded to the trial Court with instructions to sustain the Plea in Abatement.

## ON MOTION FOR REHEARING

■ The Judgment and Opinion of this Court were rendered on December 18, 1974. Under Rule 458, Texas Rules of Civil Procedure, a motion for rehearing was required to be filed within fifteen days, or on or before January 2, 1975. By letter dated January 2, 1975, and with an envelope containing a postage meter stamp [1] dated January 2, 1975, Appellee mailed to the Clerk of this Court a motion for rehearing, which was received by the Clerk on January 6, 1975. Appellant has filed a motion to strike the motion for rehearing, contending it was not timely filed, and citing Wilkinson v. Lindsey, 321 S.W. 2d 158 (Tex.Civ.App.—Amarillo 1959, no writ), and other cases cited in that opinion on motion for rehearing.

■ We do not believe those cases control, and our research has not disclosed any case directly in point. Clearly the time for filing a motion for rehearing may not be extended either by agreement of the parties or by action of the Court. Bell v. Rains County, 326 S.W.2d 189 (Tex.Civ. App.—Texarkana 1959, no writ); Thomas v. Thomas, 228 S.W.2d 548 (Tex.Civ.App. —Fort Worth 1950, no writ).

■ But Rule 5, Tex.R.Civ.P., provides that if a motion for rehearing is sent to the proper clerk by first-class United States mail in an envelope properly addressed and stamped and is deposited in the mail one day or more before the last day for filing the same, and received by the clerk within ten days, it shall be deemed filed in time. Appellee's motion being due on January 2, 1975, the last day for mailing it to the Clerk was January 1, 1975. Article 4591, Tex.Rev.Civ.Stat.Ann., makes the first day of January a legal holiday. Rule 4, Tex.R.Civ.P., provides that in computing any period of time prescribed or allowed by the Rules of Civil Procedure, if the last day of the period so computed is a legal holiday, the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday. We conclude that since the last day for mailing the motion for rehearing under Rule 5 was on January 1, then under Article 4591 and Rule 4, Appellee had until the

---

1. Such postmark, while some evidence of the date of mailing, is not conclusive under Rule 5. The better practice would be to use an official Postal Service postmark. See 36 Tex. B.J. 401.

following day, January 2, to mail the motion. It was received within ten days and therefore is deemed filed in time. The motion to strike is overruled.

Having considered said motion for rehearing, it is overruled.