In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-324 CV


____________________



IN RE BEN "BENJI" JOHNSON






Original Proceeding






O P I N I O N



 Our opinion of October 7, 2004, is withdrawn, and this opinion is substituted. 

 The trial court found relator, Ben "Benji" Johnson, in contempt of court and
committed him "to the Jasper County Jail until such time as he deposits the sum of
$24,150.32" into the registry of the court. The contempt order finds he is able to deposit
the funds. In this habeas corpus proceeding, relator says he has been imprisoned for
nonpayment of a debt in violation of the Texas Constitution. See Tex. Const. art. I, § 18. 
 The underlying case is the guardianship of Jimmy Mays. Mays' daughter, Jemece
Mays Richard, has been appointed his guardian. As guardian, Richard is attempting to
recover Mays' property. See Tex. Prob. Code §§ 768, 877 (Vernon 2003 & Vernon
Supp. 2004). 

 Mays' wife, Rose Mays, who divorced Jimmy in 2001 and remarried him in April
2004, received a check in the mail payable to Jimmy Mays in the amount of $24,150.32. 
The trial court instructed Rose Mays to pay the money into the registry of the court. Rose
deposited the check into a credit union account, withdrew the entire amount in cash, and
gave the money to relator for safekeeping.

 Relator testified he placed the money under a pine tree where he could watch it from
his porch. When Rose Mays returned for the money, relator went to the tree and
discovered the money was gone. After hearing this explanation, the trial court ordered
relator and Rose Mays to pay the money into the registry of the court by 9:30 the next
morning. When they failed to do so, he found them in contempt of court and put them in
jail. 

 Payment of a debt may not be coerced by imprisonment. See Tex. Const. art. I,
§ 18 ("No person shall ever be imprisoned for debt."); see Ex parte Hall, 854 S.W.2d
656, 658 (Tex. 1993). However, not every obligation to pay money is a "debt" within the
meaning of Article I, Section 18 of the Texas Constitution. See id.; Ex parte Davis, 101
Tex. 607, 111 S.W. 394, 396 (1908) ("There are many instances in the proceedings of the
courts where the performance of an act may be enforced by imprisonment and would not
come within the prohibition of the Constitution, although it might involve the payment of
money."). For example, the obligation to support one's spouse or child is "a legal duty
arising out of the status of the parties," not out of a contract, and is not considered a debt. 
See Ex parte Hall, 854 S.W.2d at 658. In Ex parte Hall, the Court explained that a person
may also contract to support a spouse or child, "and that obligation, to the extent it
exceeds his legal duty, is a debt." Id. The obligation to pay money arising out of a
contract is a debt within the meaning of Article I, Section 18. See generally Ex parte
Duncan, 462 S.W.2d 336, 337 (Tex. Civ. App.--Houston [1st Dist.] 1970, orig.
proceeding) (citing Ex parte Yates, 387 S.W.2d 377 (Tex. 1965)). 

 In Ex parte Sutherland, 526 S.W.2d 536, 539 (Tex. 1975), the Court held an
obligation to surrender specific property in the division of a community estate was not a
debt. Sutherland was placed in jail for contempt for failing to pay his former wife one-half
of retainer pay received by him as a member of the Fleet Reserve. The Supreme Court
explained as follows why there was "no problem here of imprisonment for debt in the
constitutional sense":

 Relator was constituted a trustee by the court to collect and remit to the clerk
the one-half of the pay awarded to the wife. In performing that duty he will
not be paying a debt but will be surrendering the share to which his former
wife is legally entitled. His confinement to compel payment of the arrearage
in the wife's one-half of the retainer pay is not imprisonment for debt within
the meaning of Article 1, Section 18, of our Constitution.


Id. Sutherland was not ordered to pay a debt; rather, he was ordered to surrender property
to which another person was legally entitled. Surrendering another's property, even
though the property was money, was not payment of a debt. 

 In Ex parte Gorena, 595 S.W.2d 841, 846-47 (Tex. 1979), a case involving an
obligation to make monthly payments of retirement benefits to a former spouse, the Court
said "[n]umerous cases in other jurisdictions have affirmed a trial court's order holding a
trustee or other fiduciary in contempt for failure to turn property, including money, over
to third persons." Id. The Court approved reasoning which likened a spouse's status to
that of a trustee in considering whether an obligation to pay was a debt. Id. (approving
"the decision and reasoning" in Ex parte Anderson, 541 S.W.2d 286 (Tex. Civ. App.--San
Antonio 1976, orig. proceeding)). In Ex parte Buller, 834 S.W.2d 622, 626 (Tex. App.--Beaumont 1992, orig. proceeding), this Court held a trustee or other fiduciary could be
jailed for contempt in refusing to turn over funds.

 Relator's obligation is based on his possession for safekeeping of property the trial
court had previously ordered placed in the registry of the court. That the property is
money does not mean his legal duty is a debt. The trial court found he is still able to place
the money in the registry of the court. He is holding another's property and has been
ordered to surrender the property. We conclude relator is not being imprisoned for
nonpayment of a debt within the meaning of Article I, Section 18 of the Texas
Constitution. 

 Relator says in his reply brief that he does not have the cash. He says he "cannot
use personal funds to satisfy the Order because he is indigent," and notes he has moved
to proceed in forma pauperis in this case. We understand this argument to be there is no
evidence he still has the asset entrusted to him in his possession, he cannot comply, and
the order is therefore void. See Ex parte Chambers, 898 S.W.2d 257, 259-60 (Tex. 1995). 


 A contempt order imposing a coercive restraint is void if the condition for purging
the contempt cannot be performed. Ex parte Dustman, 538 S.W.2d 409, 410 (Tex. 1976);
Ex parte Thetford, 369 S.W.2d 924, 925 (Tex. 1963). "[T]he issue in habeas corpus
review is whether the relator has conclusively established that [the relator] was
involuntarily unable to pay." See Ex parte Chambers, 898 S.W.2d at 262 (criminal
contempt); see also In re Briggs, 965 S.W.2d 743, 745 (Tex. App.--Beaumont 1998, orig.
proceeding) (civil contempt). 

 Once the money was traced into his possession, relator was presumed to possess the
entire amount traced, and he was required to show he was not in possession of all or part
of the traced amount. See generally Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226
(Tex. 1991). The trial court determines the credibility of the witnesses and the weight to
be given their testimony. In re Briggs, 965 S.W.2d at 745. Relator admits he had
possession of the cash, but he says it must have been stolen after he placed it under a pine
tree where he could watch it from his porch for ten or twelve days until Rose Mays
returned for the money. The trial court was not required to accept an incredible account. 
On this record we cannot say relator has established involuntary inability to comply. 

 The relator is not entitled to relief on the issue originally presented to this Court. 
Accordingly, the issue is overruled. 

OPINION ON MOTION FOR REHEARING


 In a motion for rehearing, relator argues his right to due process of law was violated
because he was not given proper notice of the contempt, was not given the opportunity to
retain counsel, and did not have an opportunity to defend himself at a contempt hearing. (1) 
Relator says he never had an attorney "at any point during the evidentiary hearing on the
Motion to Show Cause." Relator also says the court signed its order finding him in
contempt of court without holding a contempt hearing. Relator further states:

 [T]he district court apparently relied on the show cause hearing of July 21,
2004, at which [relator] was merely testifying as a witness (which he did
voluntarily without the necessity of a subpoena), without counsel, and with
no knowledge that the judge might place him in jail the very next day.

 

 Contempt of court proceedings may be civil or criminal. See Ex parte Werblud, 536
S.W.2d 542, 545-46 (Tex. 1976). See In re Houston, 92 S.W.3d 870, 876 n.2 (Tex.
App.--Houston [14th Dist.] 2002, orig. proceeding). Criminal contempt is punishment for
past conduct. Id. Civil contempt is coercive, and the contemnor may obtain his release
by complying with the court's order. Id. 

 The distinction between civil and criminal contempt impacts the due process
analysis. See International Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821,
826-27, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); see also Hicks v. Feiock, 485 U.S. 624,
631-32, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Criminal penalties may not be imposed
upon one who has not been afforded the Constitutional protections required of criminal
proceedings. See Bagwell, 521 U.S. at 826. However, civil coercive sanctions designed
to compel future compliance may be imposed in a civil proceeding upon notice and an
opportunity to be heard. Id. at 827. 

 The due process analysis is also impacted by whether the contempt is direct or
constructive. Direct contempt occurs in the presence of the court. See Ex parte
Chambers, 898 S.W.2d 257, 259 (Tex. 1995). Contempt outside the presence of the court
is constructive contempt. Id.; see also Ex Parte Gordon, 584 S.W.2d 686, 688 (Tex.
1979). Direct contempt that is witnessed by the judge may be summarily punished. See
In re Oliver, 333 U.S. 257, 274, 68 S.Ct. 499, 92 L.Ed.2d 682 (1948). No further proof
is required. Id; see also generally Ex Parte Daniels, 722 S.W.2d 707, 709 (Tex. Crim.
App. 1987)(criminal contempt). However, contempt not personally observed by the judge
requires notice and an opportunity to be heard on disputed facts. See Ex parte Gordon,
548 S.W.2d at 689-90. Absent adequate notice, a contempt order is a nullity. In re
Acceptance Ins. Co., 33 S.W.3d 443, 448-49 (Tex. App.--Fort Worth 2000, orig.
proceeding). Finally, the nature of the sanction is a factor to be considered in determining
due process. See generally Ector County Indep. Sch. Dist. v. Hopkins, 518 S.W.2d 576,
581 (Tex. App.--El Paso 1974, no writ). Jail is a deprivation of liberty, whether the
contempt is civil or criminal, direct or constructive. 

 This is a civil contempt order designed to coerce relator to comply with the trial
court's order. The contempt is constructive. The hearing at which relator testified was
held to resolve a motion to show cause, and to convert the temporary guardianship into a
permanent one. (2) The record does not reflect relator was represented by counsel. At the
conclusion of the testimony, the following exchange occurred between Richard's counsel,
Mays' counsel, and the trial court:

 [Richard's Counsel]: We would like to ask that [Rose] be found in
contempt of court, put in jail, and ask that the
property be returned to the temporary guardian.

 * * *

 [The Court]: Are there pleadings on file that I can find her in
contempt?


 [Mays' Counsel]: I didn't see it in the file.


 [Richard's Counsel]: I don't believe that I have asked for a finding of
contempt because there was not a prior written
order.


 [Mays' Counsel]: No, sir, Your Honor.


 [Richard's Counsel]: It was ordered that she bring the money to the
registry of the court, orally.


 [The Court]: I just orally asked her to do that. I believe she's
admitted that. Okay. I'm going to find that . .
. the money, the $24,150 should be deposited in
the registry of the district court of Jasper
County, Texas. I'm going to order that done by
9:30 in the morning. If the money is not
deposited in the registry of the district court of
Jasper County, Texas, I find not only Mrs.
Mays, but Mr. Johnson, Rev. Johnson in
contempt of this court.

 * * *

 [Mays' Counsel]: Your Honor, we understand the position of the
Court; however, we've not had proper notice of
this hearing.


 [The Court]: She keeps saying you have. I'll set the hearing
later. Do we understand what's going to happen
in the morning at 9:30?

 * * *

 [The Court]: Mrs. Mays, do you understand that you can be
in contempt of court; and if you are in contempt
of court, it's very possible you can go to jail
until you purge yourself of that contempt. Mr.
Johnson, did you understand what I said?

 * * *

 [The Court]: I'll see you in the morning at 9:30, and one of
you better have that money.

 * * *

 [The Court]: Deposit to the registry of the District Clerk of
Jasper County, Texas and if it's not, I want a
written order. I'm going to sign that order
today. But I'm giving you notice, Mrs. Mays;
and I talked to the preacher out there, Brother
Johnson. He knows to have it here at 9:30 in the
morning. And he knows what's going to happen
in the event it's not here.


 Relator's explanation for his failure to deliver the cash involves disputed facts
concerning out-of-court conduct. He was entitled to reasonable notice of the contempt
charge and a reasonable opportunity to be heard. See In re Houston, 92 S.W.3d at 876. 
Reasonable notice will provide him with an opportunity to consult counsel, present
witnesses, or otherwise prepare his defense. 

 The notice provided to relator, which the record reflects was less than twenty-four
hours, was not sufficient. Johnson was a witness at the show cause hearing. He was not
the respondent. Considering the inadequacy of the notice provided in this case, the
contempt order is a nullity. See In re Acceptance Ins. Co., 33 S.W.3d at 448-49. 
Relator's first issue on motion for rehearing is sustained. We grant the petition for writ
of habeas corpus and order the relator Ben "Benji" Johnson released from confinement and
from the bond previously ordered. 

 WRIT GRANTED. 

 ___________________________________

 DAVID GAULTNEY

 Justice



Submitted on August 6, 2004

Opinion Delivered December 9, 2004 


Before McKeithen, C.J., Burgess, and Gaultney, JJ. 

CONCURRING AND DISSENTING OPINION



 I concur with opinion of the Court on motion for rehearing. Because I disagree with
the majority's opinion on the substantive issue originally presented in the relator's petition,
I respectfully dissent. While this is a sparse record, this much we do know:

 1 - Jemece Richard was appointed temporary guardian of Jimmy Mays. 


 2 - Rose Mays deposited a check from Louisiana-Pacific to Jimmy Mays into the
Texaco Credit Union and then withdrew the cash.


 3 - There was a prior hearing where the Judge verbally ordered Rose to pay the
money into the registry of the court. 


 4 - Rose gave Johnson the money after she was told to "bring [the money] to
court." 


 5 - The hearing conducted on July 21, 2004 was not a contempt hearing, "because
there was not a prior written order." 


 6 - At the conclusion of the July 21, 2004 hearing, the court verbally ordered Rose
and Johnson to deposit $24,150 into the registry of the court by 9:30 a.m., July 22, 2004. 


 7 - A written order reciting the verbal order and setting a hearing for 10:30 am on
July 22, 2004. The order was signed July 22, 2004. 


 8 - The order committing Johnson to jail recites the verbal order of July 21 and
finds Johnson is able to deposit the funds but has refused to do so and finds Johnson in
contempt, but does not recite that a hearing was held. 


 Therefore, based solely on the record, Mr. Johnson is, at best, a gratuitous bailee (3)
of the money from Ms. Mays or, at worst, a thief of the money from Ms. Mays or Ms.
Richard. As I view the record, Mr. Johnson had no knowledge of the dispute between Ms.
Mays or Ms. Richard nor any knowledge of the verbal order that Ms. Mays deposit the
proceeds of the check into the registry of the court. All Mr. Johnson knew was Ms. Mays
asked him to keep the money until she could take it to court. Under these facts, Mr.
Johnson clearly had no fiduciary relationship with Ms. Richard, the court or Ms. Mays,
for "[a] bailment generally does not create a formal, fiduciary relationship between bailee
and bailor." Prime Products, Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 637 (Tex.
App.--Houston [1st Dist.] 2002, pet. denied) (citing Bank One, Texas, N.A. v. Stewart,
967 S.W.2d 419, 442 (Tex. App.--Houston [14th Dist.] 1998, pet. denied). Johnson's
only relationship (bailor/bailee) was with Ms. Mays and either he negligently (failed to
take proper care of the money) or intentionally (stole the money) breached that
relationship.

 If the trial court and the majority believes Johnson negligently breached his duty, (4)
then this is a pre-suit, pre-judgment civil commitment under the guise of contempt. If the
trial court and the majority believes Johnson intentionally breached his duty, (5) then this is
either a pre-suit, pre-judgment civil commitment under the guise of contempt or a pre-trial,
pre-sentence criminal commitment under the guise of contempt. (6) Neither of these three
rationales are constitutional. 

 A similar case, not mentioned by the majority, is Currie v. Drake, 550 S.W.2d 736,
741 (Tex. Civ. App.--Dallas 1977, writ ref'd n.r.e.). The court stated:

 At the conclusion of the hearing the court entered an order directing
that actions be taken. A portion of that order directed that Holt and Currie
return moneys which were owed to the estate. The order does not direct
appellants to deliver to the executor a specific identified fund in being, but
only to repay the amount of money previously received. Consequently, this
portion of the order is a direction for payment of a debt, and if the parties
do not comply, it would not be enforceable by contempt. Tex.Const. art. I,
s 18. The proper remedy would have been a judgment on which execution
might be levied. Northwestern Fuel Co. v. Brock, [139 U.S. 216, 220, 11
S.Ct. 523, 35 L.Ed. 151 (1891)], and Salgo v. Hoffman, 521 S.W.2d 922,
925 (Tex.Civ.App. Dallas 1975, no writ). Accordingly, we reverse the
order and remand the cause to the probate court with instructions to conduct
a hearing wherein testimony may be taken concerning the payment of the
claim and offsets, if any, and render a judgment accordingly.


 Here, too, the proper remedy is not an order of contempt, but a suit for conversion. 
I would grant the writ, release Mr. Johnson and not subject him to further contempt
proceedings.

 
 ________________________________

 DON BURGESS

 Justice

Concurrence and Dissent Delivered

December 9, 2004
1. Rose Mays has filed a petition for writ of habeas corpus.
2. In his motion for rehearing, relator says Jimmy Mays is deceased. The parties do
not address the effect of the ward's death on this civil contempt proceeding. See Tex.
Prob. Code Ann. § 745(a)(2) (Vernon Supp. 2004).
3. Cash may be the subject of a bailment. See Tellez v. Tellez, 531 S.W.2d 368, 369
(Tex. Civ. App.--El Paso 1975, no writ); Bloom v. Bloom, 767 S.W.2d 463, 469 (Tex.
App.--San Antonio 1989, writ denied).
4. "A bailee has the duty to exercise ordinary care over the goods and is therefore
'responsible' for the bailor's goods." Sisters of Charity of the Incarnate Word, Houston,
Texas v. Meaux, 122 S.W.3d 428, 431 (Tex. App.--Beaumont 2003, pet. denied).
5. "Theft as defined in Section 31.03 constitutes a single offense superseding the
separate offenses previously known as theft, theft by false pretext, conversion by a bailee,
theft from the person, shoplifting, acquisition of property by threat, swindling, swindling
by worthless check, embezzlement, extortion, receiving or concealing embezzled property,
and receiving or concealing stolen property." Tex. Penal Code Ann. § 31.02 (Vernon
2003).
6. The majority has certainly made it easier to retrieve stolen money; one may
simply order the bank robber to return the money and if there is no compliance, hold the
robber in contempt and civilly commit the robber until the money is returned. A novel
approach but with definite constitutional infirmities.